NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6699

THE STATE OF OHIO, APPELLEE, *v*. HACKETT, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hackett*, Slip Opinion No. 2020-Ohio-6699.]**

*Criminal Law—Sixth Amendment to the United States Constitution does not prevent a trial-court judge from limiting the role of standby counsel.*

(No. 2019-0601—Submitted April 29, 2020—Decided December 17, 2020)

APPEAL from the Court of Appeals for Mahoning County, No. 17 MA 0106, 2019-Ohio-1091.

_____

**DEWINE, J.**

{¶ 1} In his criminal trial, David Hackett waived his right to counsel under the Sixth Amendment to the United States Constitution and chose to represent himself. After accepting Hackett's waiver, the trial court appointed "standby counsel" to be available to assist Hackett. Hackett now contends that the trial court violated his rights under the Sixth Amendment by limiting the role of this standby

counsel. We conclude that because the Sixth Amendment provides no right to standby counsel, Hackett's rights under that amendment were not violated.

**Facts and Procedural History**

*Hackett chooses to represent himself at trial*

{¶ 2} Hackett was charged with the kidnapping, rape, and murder of a woman whose nearly naked body was discovered on an access road in Youngstown, Ohio. She had been stabbed multiple times. The court appointed counsel to represent him.

{¶ 3} Hackett was scheduled for a jury trial in mid-January 2017. On the day of trial, Hackett asked the court to be allowed to represent himself. The court held a hearing and engaged Hackett in an extended discussion to ensure that Hackett understood the ramifications of giving up his right to an attorney, as well as the possible penalties he would face if convicted. The judge warned Hackett that his lack of familiarity with trial procedures would likely make it harder for him to present his defense. Despite the judge's cautionary words, Hackett was undeterred. The court granted Hackett's request, continued the trial, and informed Hackett that it would appoint his current attorney, Louis DeFabio, as standby counsel. The court advised Hackett: "[I]f during the trial you recognize that you're in over your head and want Attorney DeFabio to jump in at that point in time, I would allow that, but he may be unable to repair any damage that you may have done acting as your own attorney * * *."

{¶ 4} In late March, Hackett filed a motion for "full assistance of standby counsel." In his motion, Hackett asked the court to have DeFabio seated at counsel table, to actively assist him in navigating courtroom protocol, to "advocate on the record with respect to procedural matters," and to "proactively engage issues." At a hearing on the motion, the trial court expressed the view that Hackett was requesting improper hybrid representation, and on this basis denied the motion. The court explained, "You have the right either to appear pro se or to have counsel,

but you have no corresponding right to act as co-counsel." At the same hearing, DeFabio clarified his understanding of his role as standby counsel. He said that he would look over available evidence and stay on top of the issues in the case so that he could (1) advise Hackett on how to get specific items into evidence and (2) take over if Hackett wanted him to. The court did not disagree with DeFabio's assessment of his function.

{¶ 5} Hackett's trial had been rescheduled to late May. Just prior to voir dire, Hackett asked the court, "[H]ow do you define the responsibilities or the duties of standby counsel?" In response, the trial judge said, "If you decide now or during the trial that you are in over your head and ask me to have [standby counsel] step in, then he would come in as your attorney. It is nothing more and nothing less than that." To this, Hackett responded, "So in essence, the only time he have [sic] a voice, then, is if I say I relinquish my defense as pro se." The judge responded: "Not your defense. That you relinquish your choice to proceed pro se." Hackett then asked, "[I]f * * * we have a trial right now and I wish to present evidence and I don't know how, he can do nothing then, right?" The court responded, "Correct." And the judge again stated that what Hackett was asking for was improper hybrid representation, which was not allowed. Hackett claims that these statements immediately prior to trial show that the trial court limited standby counsel's role in an improper manner.

*The court of appeals affirms Hackett's convictions*

{¶ 6} A jury found Hackett guilty of all the charged offenses, and he appealed to the Seventh District Court of Appeals. Relevant here, he argued that the trial court had unconstitutionally limited standby counsel's role by not allowing counsel to explain courtroom procedures and rules to him. *See* 2019-Ohio-1091, ¶ 44. The court of appeals did not squarely address whether limits on standby counsel's role could ever present a constitutional concern. Instead, the court of appeals concluded that the record did not demonstrate that the trial court prevented

Hackett from obtaining advice from standby counsel about courtroom procedures, noting that Hackett had failed to cite any portions of the transcript indicating that standby counsel's role was impermissibly limited. *Id.* at ¶ 44, 62. The court of appeals explained that the trial court's statement immediately prior to trial, "when considered in isolation, might be seen as an indication" that Hackett could not ask DeFabio for advice on how to introduce evidence at trial but that the statement should be considered in the context of the trial court's other instructions and of Hackett's request for hybrid representation. *Id.* at ¶ 59-60. The court of appeals found nothing in the pretrial statements from the trial court to indicate that Hackett was prevented from seeking DeFabio's advice on evidentiary or procedural questions. *Id.* at ¶ 58. And the court of appeals emphasized that the trial court took no exception to DeFabio's declaration that part of his role was to advise Hackett about how to get things admitted into evidence. *Id.* at ¶ 56. Further, the court noted that, although it was unable to tell from the record whether Hackett spoke to DeFabio during breaks, the record was clear that Hackett never asked for a recess to speak to counsel. *Id.* at ¶ 61. It thus concluded that based on its understanding of the typical role of standby counsel, as established by other Ohio-appellate-court decisions, "the trial court did not improperly limit the role of standby counsel." *Id.* at ¶ 48-51, 61-62.

{¶ 7} We accepted Hackett's discretionary appeal on the following proposition of law: "Appellant was denied his constitutional Sixth Amendment right to counsel when the trial court incorrectly limited the role of standby counsel." *See* 156 Ohio St.3d 1470, 2019-Ohio-2953, 126 N.E.3d 1185.

**Analysis**

{¶ 8} We are tasked with answering a narrow question of law—Does the Sixth Amendment to the Constitution of the United States prevent a trial-court judge from limiting the role of standby counsel? As we explain, the answer to that question is no. The reason is simple. There is no Sixth Amendment right to any

4

assistance from standby counsel. Hence, limiting the role of standby counsel, in and of itself, cannot violate the Sixth Amendment.

*A court may choose to appoint standby counsel when a defendant opts to represent himself*

{¶ 9} In *Faretta v. California*, the United States Supreme Court held that a criminal defendant has a constitutional right to self-representation. 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But the court also noted that a trial court may "appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834, fn. 46. This court also has held that after a defendant validly waives the right to counsel, a trial court is "permitted to appoint standby counsel to assist the otherwise pro se defendant." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28.

{¶ 10} But we have cautioned that when a court appoints standby counsel, there are limits on how actively standby counsel can be involved. *Id.* at ¶ 33. Instances where standby counsel is overly involved in the proceedings and functions essentially as co-counsel with the self-representing defendant—so-called "hybrid representation"—pose several potential problems. *Id.* First, hybrid representation creates confusion as to who is the ultimate decision-maker. This may lead to ethical concerns for counsel if there is disagreement over trial strategy and presents courtroom-management challenges for the trial judge. *Id.* Second, hybrid representation raises serious questions about whether the defendant is representing himself or is represented by counsel, because there is no clear boundary line between hybrid representation and self-representation. *Id.* at ¶ 34-35. This boundary problem complicates the question whether the defendant has waived the right to representation. And third, as other courts have noted, if standby

counsel is too actively involved, a defendant's right to self-representation may be violated. *See Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006).

*It is well established that there is no constitutional right to standby counsel*

{¶ 11} As we have explained, courts are permitted to appoint standby counsel to aid a defendant who chooses to exercise his right to represent himself. But the fact that a court is *permitted* to appoint standby counsel does not mean that a defendant has a constitutional right to standby counsel.

{¶ 12} The Sixth Amendment guarantees a defendant the right "to have the Assistance of Counsel for his defence." A defendant who chooses to represent himself must explicitly waive this right. *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, ¶ 18. Plainly, a defendant cannot assert a violation of a constitutional right when he has made an express choice to give up the benefits conferred by that right.

{¶ 13} Indeed, it is well established that there is no constitutional right to standby counsel. This court has commented that there is no obligation under state or federal law to even inform a defendant who seeks to waive counsel about the possibility of appointing standby counsel. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 50. Similarly, federal courts that have addressed the issue have uniformly rejected the claim that there is a constitutional right to standby counsel. *See, e.g., United States v. Cohen*, 888 F.3d 667, 680 (4th Cir.2018) ("It is settled that [the defendant] had no right to the appointment of a standby counsel after he chose to proceed pro se, let alone the right to a standby counsel of his choosing"); *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir.1998) ("[the defendant] was constitutionally guaranteed the right to represent himself if he so chose, or to receive competent representation from an attorney, but the availability of standby counsel to provide a combination of the two was not constitutionally required"); *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir.1998).

{¶ 14} Hackett relies most heavily on a passage from *Martin* in which this court said that a defendant has "the right to the representation by counsel or to proceed pro se with the assistance of standby counsel," 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 32. But *Martin*, of course, did not—and could not—expand the rights afforded by the Sixth Amendment. *Martin* holds that a defendant cannot at the same time exercise *both* the Sixth Amendment right to counsel *and* the right to proceed pro se, a holding inconsistent with Hackett's assertion that his Sixth Amendment right to counsel was violated after he chose to represent himself. Indeed, *Martin* recognizes that the appointment of standby counsel is permissive, not mandatory—"[o]nce the right to counsel is properly waived, trial courts are permitted to appoint standby counsel * * *." *Id*. at ¶ 28. Thus, the phrase from *Martin* upon which Hackett relies is properly understood as simply acknowledging that a defendant may exercise his right to proceed pro se with the assistance of standby counsel *if* one is appointed.

{¶ 15} Given that there is no Sixth Amendment right to standby counsel, it is hard to see how a court could violate the Sixth Amendment by appointing standby counsel but limiting counsel's role. Without a constitutional right to standby counsel at all, there is no constitutional entitlement that could ground a claim that standby counsel provide a certain level of assistance.

{¶ 16} Indeed, as noted above, insofar as there is a constitutional worry related to the appointment of standby counsel, "the primary concern is that appointed counsel does too much, so as to abrogate the *Faretta* right to self-representation, not too little." *Simpson*, 458 F.3d at 597; *see also United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997). That demonstrates another problem with Hackett's claim that there is a right to a certain level of involvement from standby counsel. Hackett would have us adopt a rule that would force a trial court to constantly navigate a Goldilocks problem—if standby counsel is allowed to do too much, then that risks a violation of the defendant's right to self-representation, and

if standby counsel is allowed to do too little, then a court might violate the constitutional right to counsel. Fortunately, the Constitution does not require a trial court judge to navigate this sort of problem. When a defendant elects to represent himself, he is forgoing any Sixth Amendment argument based on the idea that counsel—standby or otherwise—provided insufficient aid.

{¶ 17} Despite agreeing that a criminal defendant does not possess a Sixth Amendment right to standby counsel, the dissent nevertheless concludes that the trial court abused its discretion by failing to allow standby counsel to sit at the defense table. To be clear, there is nothing in the record that shows a separate request to allow standby counsel to sit at the defense table. Rather, the request came in Hackett's motion in which he claimed a constitutional right to "the full assistance of standby counsel," under which standby counsel would actively perform a variety of roles at trial, including advocating on the record. As explained above, under settled law, the trial court appropriately denied this request.

{¶ 18} The dissent, however, would find that the trial court abused its discretion by not parsing out of this far-reaching motion a request for standby counsel to sit at the defense table. There are numerous problems with this argument. First, it is not one that was raised below. There is no indication in the record that after the court denied his motion for the full assistance of standby counsel, Hackett followed up with a specific request for standby counsel to sit at the defense table. And in the court of appeals, Hackett never argued that the trial court abused its discretion when placing limitations on standby counsel, but instead focused solely on the alleged constitutional violation. Indeed, the proposition of law accepted by this court asserts only that the limitations on standby counsel denied Hackett the protections of the Sixth Amendment.

{¶ 19} An even more fundamental problem with the dissent's argument is that it fails to tether its abuse-of-discretion claim to any legal standard. A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion

and the judge's exercise of that discretion is outside of the legally permissible range of choices. *See United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 372, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) (Frankfurter, J., dissenting). But here, the permissible range of choices available to the trial judge included outright denial of the request for standby counsel. Because the trial court had the discretion not to appoint standby counsel at all, it could not abuse its discretion by appointing standby counsel with a limited role.

*We encourage trial courts to clearly define and explain standby counsel's role*

{¶ 20} To be clear, nothing prevents standby counsel from providing advice to a criminal defendant on evidentiary or procedural matters, so long as the involvement of standby counsel does not reach the level of "unsolicited and excessively intrusive participation" that is at odds with a criminal defendant's right to self-representation. *McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). We stress that while there is no legal requirement that a trial court appoint standby counsel, we do not discourage trial courts from doing so. Indeed, standby counsel can be of great aid to criminal defendants who choose to represent themselves and can help to ensure that defendants who overestimate their ability to handle their own defense are not left totally adrift. But whether to appoint standby counsel and what role standby counsel can reasonably play in a proceeding might vary with the complexity of the case, the wishes of the defendant, or other factors, and is left to the discretion of the trial court. When standby counsel is appointed, we encourage trial courts, as a matter of best practice, to explicitly define the role standby counsel will be playing in the proceedings and to ensure that the defendant understands this role.

**Conclusion**

{¶ 21} When a criminal defendant validly exercises his right to self-representation, that comes with a cost; he can no longer raise a Sixth Amendment

claim that trial counsel—standby or otherwise—did not do enough in his defense. Thus, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and FRENCH, JJ., concur.

FISCHER, J., concurs, with an opinion.

STEWART, J., concurs, with an opinion joined by O'CONNOR, C.J.

DONNELLY, J., dissents, with an opinion.

_____

**FISCHER, J., concurring.**

{¶ 22} I agree with the majority opinion that under the Sixth Amendment to the United States Constitution, a defendant does not have a constitutional right to standby counsel. Therefore, based on the narrow issue before this court, I must concur in the majority's judgment. I write separately, however, to express my concerns with this court's precedent on issues related to standby counsel and hybrid representation under the Ohio Constitution.

**The narrow issue before this court restricts us from conducting a complete review**

{¶ 23} Appellant, David Hackett, appealed to this court pro se and presented as his fourth proposition of law that he "was denied his constitutional Sixth Amendment right to counsel when the trial court incorrectly limited the role of standby counsel." He did not raise a similar proposition of law under the Ohio Constitution.

{¶ 24} This court accepted that proposition of law for review, and the majority opinion appropriately limits the scope of its analysis to address only that issue. *See Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 44 (Fischer, J., concurring) ("As is proper, the majority opinion does not conduct an analysis of unraised arguments"). But after reviewing the facts and the issue at hand, I find that the analysis seems incomplete in that it does not

address Hackett's right to consult with standby counsel under the Ohio Constitution.

{¶ 25} I do not fault Hackett for failing to raise this issue under the Ohio Constitution. Indeed, this court's precedent would discourage even a seasoned attorney from raising such an argument. It was this court that intertwined a defendant's right to counsel under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *See State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 31-32 (a defendant has the right under the United States Constitution and the Ohio Constitution to be represented by counsel or to proceed pro se with the assistance of standby counsel, but those rights may not be asserted simultaneously for hybrid representation); *State v. Thompson*, 33 Ohio St.3d 1, 6, 514 N.E.2d 407 (1987) (neither the United States Constitution nor the Ohio Constitution require hybrid representation). And it is understandable given such precedent why a defendant would not raise a claim under both the United States Constitution and the Ohio Constitution.

{¶ 26} But the Ohio Constitution is a document of independent force. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus; *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 14 (lead opinion). Parties should not presume that the rights afforded to a person under the United States Constitution are the only rights or are the same rights as those afforded to a person under the Ohio Constitution. In some circumstances, rights afforded to people under the Ohio Constitution are greater than those afforded under the United States Constitution. *See Mole* at ¶ 20-21 (lead opinion). This is true even when this court has previously ruled that the state and federal Constitutions are coextensive. *See State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24 (majority opinion) and 31-33 (dissenting opinion).

{¶ 27} So although I agree with the majority opinion that a defendant has no right to standby counsel under the Sixth Amendment and that the scope of our

11

review is limited to that issue, I cannot help but wonder, if Hackett had raised the claim under Article I, Section 10 of the Ohio Constitution, would this court have reached the same result?

### The right to standby counsel in Ohio

{¶ 28} A defendant has a right to proceed with counsel and a right to proceed pro se under the Ohio Constitution. *Thompson*, 33 Ohio St.3d at 6-7, 514 N.E.2d 407. And under our current case law, there is at least an argument that a defendant also has a right to standby counsel in Ohio. *See Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227.

{¶ 29} In *Martin*, this court held that "[i]n Ohio, a criminal defendant has the right to representation by counsel or *to proceed pro se with the assistance of standby counsel*." (Emphasis added.) *Id.* at paragraph one of the syllabus. This language appears to acknowledge the existence of a right to standby counsel in Ohio.

{¶ 30} But although this court in *Martin* used this unequivocal language in the syllabus regarding the right to standby counsel, the court suggested in the body of the opinion that the appointment of standby counsel is not a right but is a discretionary courtesy that a trial court may extend once a defendant has properly waived his or her right to counsel, *see Martin* at ¶ 28.

{¶ 31} The conclusion that the appointment of standby counsel is not a right but is a discretionary courtesy granted by the trial court is supported by this court's decision in *State v. Obermiller*, 147 Ohio St. 175, 2016-Ohio-1594, 63 N.E.3d 93. In *Obermiller*, this court determined that the trial court had not been required to inform Obermiller of "the potential for standby counsel" when he was deciding whether to proceed pro se. *Id.* at ¶ 50. This court recognized that trial courts are permitted to appoint standby counsel but that neither federal nor state jurisprudence requires a court to inform a defendant of the potential for standby counsel. *Id.* This

12

language in *Obermiller* suggests that defendants do not have a right to standby counsel.

{¶ 32} We accepted a proposition of law to resolve this issue earlier this year in *State v. Jones*, case No. 2019-0395. *See State v. Jones,* ___Ohio St.3d___, 2020-Ohio-4031, ___N.E.3d___, ¶ 30 (Kennedy, J., dissenting) (quoting the accepted proposition of law). However, this court decided not to resolve that issue and instead remanded the cause to the court of appeals for it to consider a threshold matter that had been argued on appeal but not fully considered due to a defect in the record. *Id.* at ¶ 3.

{¶ 33} So had Hackett raised this issue under the Ohio Constitution as interpreted by our case law, he would have had a colorable claim that he had a right to standby counsel and that that right was violated by the trial court in this case. But he would have had an even stronger claim had he raised the issue relying on the plain language of Article I, Section 10.

**The right to standby counsel under Article I, Section 10**

{¶ 34} Article I, Section 10 of the Ohio Constitution states, "In any trial, in any court, the party accused *shall* be allowed to appear *and* defend in person *and* with counsel." (Emphasis added.) The word "and" is conjunctive; the disjunctive "or" is not found in the quoted provision. As a matter of grammar and basic reading comprehension, Article I, Section 10 provides a constitutional right to hybrid representation—that is, the right to represent oneself with the assistance of counsel, with the two sharing responsibilities in preparing and conducting trial, *see Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 29. Nevertheless, this court previously held in *Thompson* and reaffirmed in *Martin* that a defendant has no right under the Ohio Constitution to hybrid representation. However, in those cases, the court did not look to the plain language of the Ohio Constitution to support that conclusion.

{¶ 35} In *Thompson*, the defendant asserted that he should have been permitted to act as cocounsel in his own behalf during trial. 33 Ohio St.3d at 6, 514 N.E.2d 407. This court rejected the defendant's argument for hybrid representation, stating: "Neither the United States Constitution, the Ohio Constitution nor case law mandates such a hybrid representation." *Id.* There was little analysis as to how this court reached that conclusion, and there was no indication that the court reviewed the plain language of Article I, Section 10 of the Ohio Constitution.

{¶ 36} The issue regarding hybrid representation and standby counsel was addressed again 17 years later when this court was reviewing the issue of what constitutes sufficient waiver of the right to counsel under the Sixth Amendment and Article I, Section 10. *Martin* at ¶ 1, 29. This court reaffirmed *Thompson* and held that a defendant has a right to representation by counsel or to proceed pro se with the assistance of standby counsel, but it expressed that the two rights may not be asserted simultaneously. *Martin* at paragraph one of the syllabus. In reaching its decision, the court did not look to the plain language of Article I, Section 10, but focused only on the "troubling issues" with hybrid representation, such as determining who is the ultimate decision-maker and whether the defendant waived counsel at various stages. *Id.* at ¶ 33-34.

{¶ 37} Since *Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, was decided, the members of this court, myself included, have accepted without question this court's precedent that defendants have no constitutional right to hybrid representation or even to receive assistance from standby counsel. *See State v. Hundley*, ___Ohio St.3d___, 2020-Ohio-3775, ___N.E.3d.___,¶ 99. At no point, as far as I am aware, has the plain language of the Ohio Constitution factored into this court's analysis of a defendant's right to hybrid representation. It should.

{¶ 38} It is true that Hackett did not challenge on appeal the denial of his request for hybrid representation and that his focus was solely on the issue of assistance from standby counsel. But if hybrid representation is guaranteed by the

Ohio Constitution, certainly the right to have standby counsel present to aid in one's defense would fall under that umbrella. However, since the issue was not presented to this court in this case, we cannot reach it. I believe that in the future, when a case properly presents us with an opportunity to consider this issue, we should reexamine our holdings in *Thompson* and *Martin* in light of the plain language of Article I, Section 10. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 35-37 (lead opinion) (stare decisis is a controlling doctrine, but does not apply with the same force and effect in cases presenting constitutional questions).

### Consequences of hybrid representation

{¶ 39} It appears to me that the reason that hybrid representation has not been accepted by this court is simply that it would be a burden to courts to implement such representation within our criminal justice system. But the fact that difficult situations and questions may arise when a defendant exercises his or her constitutional right to hybrid representation is certainly not a valid reason to deny the right. "A constitution is, in fact, and must be regarded by the judges as, a fundamental law." Hamilton, The Federalist No. 78 at 467 (Clinton Rossiter Ed.1961). Constitutional rights must therefore prevail, even when accompanied by offensive or absurd policy consequences. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag desecration is protected speech); *State v. Lessin*, 67 Ohio St.3d 487, 620 N.E.2d 72 (1993); *Natl. Socialist Party of Am. v. Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977) (staying a preliminary injunction of a proposed march by the National Socialist Party, a group promoting the hatred of Jewish people, through Skokie, Illinois). If the mere fact that the procedures necessary to protect a person's constitutional rights are burdensome were sufficient to overcome the need to protect those rights, then freedoms like our right to free speech, peacefully assemble, and bear arms could be easily vanquished.

{¶ 40} Moreover, the concerns that are mentioned by the majority opinion and by courts in the past when considering hybrid representation are not so burdensome. The issue regarding confusion over whether the defendant or counsel is the ultimate decision-maker, which could raise ethical concerns for counsel, can be easily managed—lawyers do it all the time. For example, in cases in which two attorneys represent the same defendant in this court, they must designate which attorney is lead counsel or counsel of record. *See* S.Ct.Prac.R. 2.03(A). Lead counsel is responsible for all the decisions made. A simple designation of lead counsel could be required in cases of hybrid representation so that the trial court, the attorney, and the defendant are all aware of who is responsible for the decisions made during trial. This would prevent confusion, ward off ethical concerns, and still enable the defendant to exercise his or her right to hybrid representation.

{¶ 41} And as for the question whether a defendant who chooses hybrid representation has waived his right to counsel, I see no reason why a defendant could not partially waive the right to counsel. *See* Prof.Cond.R. 1.2(c) (a lawyer may limit the scope of a new or existing representation if the limitation is reasonable under the circumstances and communicated to the client). The court could explain that (1) the defendant may choose to be lead counsel or cocounsel, (2) if the defendant chooses to be lead counsel, then the defendant will be responsible for the decisions, and (3) if the defendant chooses to be cocounsel, then certain limitations will apply. So long as the defendant is made aware of and understands his or her own role and the boundaries of defense counsel's representation, there should be minimal issues. Simply because the process would be different from what has occurred in the past does not mean that it is impossible or overly burdensome.

{¶ 42} Furthermore, hybrid representation may actually provide defense counsel and defendants freedom to strategize more effectively. Plea bargains have become the norm in our justice system. Some lawyers are hesitant to take certain

cases to trial for fear of damaging a relationship with the judge or the prosecutor—damage that they fear will affect their case assignments or the outcome for other clients in closer or more serious cases. *See* Julie Snyder, Emmanuel Dzotsi, Ben Calhoun & Sarah Koenig, *Serial Season 3: Episode 01: A Bar Fight Walks into the Justice Center*, https://serialpodcast.org/season-three/1/transcript, (accessed Nov. 13, 2020) [https://perma.cc/H9B7-ZY3R] (defense attorney believes he will get "blow back" from prosecutor, bailiff, and judge if his client does not take a plea deal). Though such concerns should not exist in our justice system, as every person has a right to a jury trial, we cannot ignore the fact that they do. With hybrid representation, some of those fears may be mitigated.

{¶ 43} Also, by permitting hybrid representation, we could eliminate any issues related to standby counsel and questions as to the role that standby counsel is to play. Rather, allowing defendants to exercise their constitutional right to hybrid representation would allow defendants to have a much more active role in their defense and would give attorneys a clearer understanding of their role than they currently have when they are appointed as standby counsel.

### Conclusion

{¶ 44} If Hackett had based his challenge on the Ohio Constitution, the result in this case may have been different. Hackett certainly would have had a colorable claim that he was entitled to standby counsel, at the very least, under the plain language of Article I, Section 10 of the Ohio Constitution.

{¶ 45} But as our precedent stands and because we are limited by the narrowness of the issue presented in this case, I agree with the majority's determination that Hackett had no right to standby counsel under the Sixth Amendment to the United States Constitution, and thus, I concur in its affirmance of the judgment of the appellate court. Consequently, I must join the majority opinion.

**{¶ 46}** I believe though that when the issue of standby counsel or hybrid representation under the Ohio Constitution is properly before this court, the court should reconsider its decisions in *Thompson,* 33 Ohio St.3d 1, 514 N.E.2d 407, and *Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, and analyze the issue in light of the plain language of Article I, Section 10.

------------------------

**STEWART, J., concurring.**

**{¶ 47}** I agree with the majority's rejection of appellant David Hackett's proposition of law because the Sixth Amendment to the United States Constitution provides no right to standby counsel, so limiting the role of standby counsel cannot be a constitutional violation. I thus concur in the judgment on that narrow issue. The majority opinion, however, avoids discussing major questions that this case raises—when should a trial court appoint standby counsel and what role should standby counsel play?

**The Current State of the Law**

**{¶ 48}** "[T]here is no independent right, under state or federal law, to standby counsel in the event that a criminal defendant chooses self-representation." *State v. Hundley,* __ Ohio St.3d __, 2020-Ohio-3775, __ N.E.3d __, ¶ 99. A trial court may, however, appoint standby counsel if it so chooses, *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28, and may even appoint standby counsel over the defendant's objection, *see Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), fn. 46. The trial court does not have to tell a defendant who is considering waiving the right to counsel that if he does choose to waive counsel, there is a possibility that standby counsel will be appointed. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 50. Although the majority opinion is correct that this court does not discourage the appointment of standby counsel, majority opinion at ¶ 20, this sentiment ignores a crucial point—there are no standards to guide the trial courts in

18

determining whether to appoint standby counsel. Finally, this court has not defined the role of standby counsel. Because of this lack of guidance, trial courts differ on matters ranging from how much a defendant can consult with standby counsel to where standby counsel will be seated during trial.

{¶ 49} What standard set of criteria can courts look to when determining whether to appoint standby counsel? The short answer: there is none. The majority opinion notes that trial courts exercise discretion in appointing standby counsel, but it gives no guidance on how trial courts should exercise that discretion. This means that trial courts will continue to appoint standby counsel arbitrarily, with the sole determining factor in whether standby counsel is appointed being which judge is assigned to preside over the case. And if the appointment of standby counsel is arbitrary, how can a defendant make a knowing and an informed decision about the choice to waive the right to counsel and proceed pro se? Finally, when a trial court does appoint standby counsel, there are no uniform standards in place that establish standby counsel's role. A defendant is often left in the dark about standby counsel's role and the type of assistance that standby counsel is or is not permitted to provide. Moreover, trial courts vary on the range of activities that they allow standby counsel to undertake, and sometimes, trial courts do not adhere to the rules they set and change the rules after the trial has started.

{¶ 50} This court can do better than this. Standby counsel is a judicial creation, and as the highest court in the state, this court should establish standards that apply to all trial courts. Doing so would remove the arbitrary nature of these appointments, help ensure that defendants are making a knowing and informed decision whether to waive the right to counsel, and provide all the participants in the trial with a clear understanding of standby counsel's role if appointed.

{¶ 51} Having sanctioned the use of standby counsel, this court should recognize that some cases are so extraordinary that they require the appointment of standby counsel. When an appointment is discretionary, the trial court should have

to advise a defendant *before* accepting a waiver of the right to counsel whether the court will appoint standby counsel and, if so, to set out in explicit terms the type of assistance it will permit standby counsel to give. This includes whether standby counsel can assume or resume the role of appointed counsel if at any time the defendant decides not to continue with self-representation. The trial court should have to explain to the defendant the difference between standby counsel and hybrid representation and explain that the latter is not permitted. Taking these steps would not only ensure a knowing and intelligent waiver of counsel but would also decrease the uncertainty created by this court's lack of guidance.

### Some Cases Demand Appointment of Standby Counsel

{¶ 52} Some cases demand the appointment of standby counsel, even over the defendant's objection. *Faretta*, 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46. An obvious example is a capital case, wherein the failure to preserve issues could lead to a procedural default on direct appeal or in postconviction proceedings. *State v. Reddish*, 181 N.J. 553, 603-604, 859 A.2d 1173 (2004) ("In accordance with our duty to ensure fairness and reliability in the administration of the death penalty, we shall require that whenever a trial court permits pro se representation in a capital case, whether in the guilt phase, the penalty phase, or both, it also must appoint standby counsel, who will be available and must be prepared to assist the defendant with his defense").

{¶ 53} Courts should also be required to appoint standby counsel automatically in cases involving life sentences. The American Bar Association advocates this approach in standards addressing the appointment of standby counsel for pro se defendants. *American Bar Association Standards for Criminal Justice,* Section 6-3.7(a) (3d Ed.2000) states:

> When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the

20

appointment of standby counsel to assist the defendant when called upon. Standby counsel should always be appointed in capital cases and cases when the maximum penalty is life without the possibility of parole. Standby counsel should ordinarily be appointed in trials expected to be long or complicated or in which there are multiple defendants, and in any case in which a severe sentence might be imposed.

{¶ 54} Several jurisdictions have followed the principles underlying this standard. *See, e.g.*, *United States v. Welty*, 674 F.2d 185, 193 (3d Cir.1982), fn. 5, quoting *American Bar Association Standards for Criminal Justice*: *The Trial Judge's Function,* Section 6-3.7 (2d Ed.1980) (" 'Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants' "); *State v. Wang*, 312 Conn. 222, 252, 92 A.3d 220 (2014), quoting *Connecticut Practice Book,* Section 44-4 (trial court " 'may appoint standby counsel, especially in cases expected to be long or complicated or in which there are multiple defendants' "); *Hicks v. State*, 434 A.2d 377, 381 (Del.1981) (describing a trial involving multiple defendants as "a situation typically demanding standby counsel" for a defendant who waives counsel). This court should likewise create a presumption for the appointment of standby counsel in complicated cases, cases in which the possible sentence exceeds the maximum penalty for a first-degree felony, and cases involving multiple defendants.

{¶ 55} The trial court should be required to explain in writing its reasoning for not appointing standby counsel when the circumstances indicate that counsel should be appointed. Appellate courts should review decisions on standby counsel to ensure that they "facilitate the function of the criminal justice process, while protecting the autonomy of the defendant and the principles and policies underlying

the right to counsel," Commentary to *American Bar Association Standards for Criminal Justice,* Section 6-3.7(a).

**A Defendant Cannot Knowingly and Intelligently Waive the Right to Counsel Unless Informed Whether Standby Counsel Will Be Appointed**

{¶ 56} Courts disfavor self-representation. *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir.2000). They thus "indulge in every reasonable presumption against waiver [of counsel]," *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). This is in no doubt for various reasons, including that pro se defendants who lack legal or procedural knowledge can draw out a trial or require the trial judge to frequently intervene to instruct the defendant on proper courtroom procedures. The tension between the judge's duties to preserve defendants' right to represent themselves and to expeditiously resolve cases means that any decision the trial court makes on the appointment of standby counsel can be, and likely will be, second-guessed on appeal. This court can make the decisions on those issues less vulnerable to attack by adopting clear standards for trial courts to follow.

{¶ 57} Trial courts must ensure that any waiver of the Sixth Amendment right to counsel is made "knowingly, intelligently, and voluntarily." Crim.R. 44(A). The United States Supreme Court has stated that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). "[W]hether standby counsel was appointed and the extent to which that counsel aided the defendant" are among the factors applied to determine whether the defendant made a knowing, voluntary, and intelligent waiver of the right to counsel. *United States v. Cash*, 47 F.3d 1083, 1088-1089 (11th Cir.1995); *see also United States v. Hurtado*, 47 F.3d 577, 583 (2d Cir.1995) (factors determining the validity of a waiver of the right to counsel include whether the

defendant understood that he had a choice between proceeding pro se and with assigned counsel, understood the advantages of having trained counsel, and had the capacity to make an intelligent choice). Trial courts should advise defendants who wish to waive the right to counsel whether they will appoint standby counsel. Given the difficulties in representing oneself, the possibility of receiving assistance from standby counsel might be a deciding factor for a defendant in determining whether to proceed pro se. But unless the defendant knows before waiving the right to counsel whether standby counsel will be appointed, the waiver of the right cannot be knowingly and intelligently made.

{¶ 58} And if this court requires trial courts to advise defendants whether standby counsel will be appointed, then it should also require trial courts to describe the level of assistance they will permit standby counsel to give. "[S]tandby counsel help strike the delicate, necessary balance between defendants' constitutional right to counsel and their constitutional right to proceed pro se." *People v. Silburn*, 31 N.Y.3d 144, 176, 74 N.Y.S.3d 781, 98 N.E.3d 696 (2018) (Rivera, J., dissenting). Just where that balance lies depends on what standby counsel is and is not allowed to do. Unless standby counsel's permitted level of participation is made known to the defendant before he waives counsel, he cannot make an informed decision. The trial court should advise a defendant who elects to waive the right to counsel that the right to counsel can later be reasserted but that he is "not entitled to 'choreograph special appearances by counsel,' * * * or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice," *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir.1991), quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122.

{¶ 59} Admittedly, this court noted in *Obermiller* that "neither state nor federal jurisprudence requires a court to inform a defendant who seeks to waive counsel of the potential for standby counsel." 147 Ohio St.3d 175, 2016-Ohio-

1594, 63 N.E.3d 93, at ¶ 50. But that case is a poor foundation on which to support the conclusion that a defendant makes a knowing decision to waive the right to counsel without first being informed whether standby counsel will be appointed. Obermiller's argument on appeal was that he might not have withdrawn his request to represent himself had the trial court not "erred by failing to 'discuss the option of appointing standby counsel.' " *See id*. at ¶ 24, 50. But the majority opinion in *Obermiller* offered no analysis for why the trial court had no duty to advise the defendant of the potential for standby counsel, other than to say that it could find no cases imposing such a duty. And it can fairly be said that this court's cursory rejection of Obermiller's assertion that the trial court had a duty to advise him about the availability of standby counsel resulted from this court's finding that the record "indicate[d] that a discussion of the possibility of standby counsel would not have changed Obermiller's position prior to his withdrawal of the request to waive counsel." *Id*. at ¶ 51. As this court's discussion of the facts shows, however, Obermiller told the trial court only that he did not want defense counsel controlling his case, saying, "If I keep them, I'm not going to let them put no defense up." *Id.* But had Obermiller been advised that standby counsel would be available to assist—but not control—his defense, he may well have decided to proceed pro se.

### Standby Counsel's Duties

{¶ 60} The "core of the *Faretta* right" of self-representation is that the defendant "is entitled to preserve actual control over the case he chooses to present to the jury," and consequently, standby counsel's participation "should not be allowed to destroy the jury's perception that the defendant is representing himself." *McKaskle* at 178. In *Martin*, this court declined to recognize a right to "hybrid" representation, in which standby counsel and the pro se defendant act as co-counsel. 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 31-34. Instead, this court applied the standard in *Faretta*—standby counsel is "to aid the accused if and when the accused requests help, and to be available to represent the accused in the

24

event that termination of the defendant's self-representation is necessary," 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46; *see also Obermiller* at ¶ 50, fn. 2 ("in standby representation, counsel assists an otherwise pro se defendant only upon that defendant's request or if the defendant is unable to or decides not to continue pro se"), citing *Martin* at ¶ 28.

{¶ 61} Besides stepping in to complete a trial if necessary, standby counsel's duties should include (1) assisting the defendant in "overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete" and (2) "help[ing] to ensure the defendant's compliance with basic rules of courtroom protocol and procedure," *McKaskle,* 465 U.S. at 183, 104 S.Ct. 944, 79 L.Ed.2d 122; *see also United States v. Moussaoui*, 591 F.3d 263, 269 (4th Cir.2010) (district court advised defendant that standby counsel was available to help him " 'locate witnesses and evidence' "); *United States v. McDermott*, 64 F.3d 1448, 1453 (10th Cir.1995) (standby counsel is expected to "consult, make some objections, help with the admission and admissibility of exhibits, and make some motions").

{¶ 62} Standby counsel is thus someone standing by ready to take over the trial should the need arise and also to act as advisory counsel, assisting with legal matters before trial and with issues that arise during trial. Standby counsel should be permitted to sit at the defense table and be available for consultation during the trial if a defendant so requests. Standby counsel should also be able to address the trial court on the defendant's behalf out of the jury's hearing.

## Conclusion

{¶ 63} This court abandons its role as the final arbiter of the law when it simply states that it does not discourage the appointment of standby counsel and merely "encourage[s]" trial courts to clearly define the role that standby counsel will be playing. Majority opinion at ¶ 20. It is past time for issuing platitudes. This

court needs to establish explicit guidelines for when standby counsel should be appointed and it should define the role of standby counsel. Clearly stating when a trial court should appoint standby counsel and what standby counsel's duties are will establish uniformity throughout the courts in this state, and when courts follow these guidelines, court resources will be preserved, and errors will be reduced. If this court continues to avoid establishing the much-needed guidance in this area of criminal jurisprudence, it can expect cases involving the waiver of counsel to remain problematic and defendants can continue to expect to be deprived of the basic information necessary to make a knowing and intelligent waiver of counsel.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 64} Appellant, David Hackett, representing himself in the trial-court proceedings, asked the trial court, who had appointed standby counsel for him, to allow standby counsel to sit at the defense table, assist in navigating courtroom protocol and procedure, and advocate with respect to procedural matters in a manner that would not undercut the reality or the perception that Hackett was in control of his defense. Believing that Hackett was asking for a forbidden "hybrid representation," the trial court denied his request. Hackett, acting pro se, was then tried and convicted. Today's majority holds that because the appointment of standby counsel is merely discretionary and not required by the Sixth Amendment, the trial court's limitations on standby counsel's role did not violate that amendment—end of story.

{¶ 65} But the mere fact that the appointment was discretionary does not insulate it from review for abuse of discretion. An error does not have to be of constitutional magnitude to be reversible.

{¶ 66} In my view, the trial court erroneously treated Hackett's request to allow assistance from standby counsel as if it were a request for hybrid

representation and consequently imposed an unreasonable and arbitrary limitation on Hackett's ability to have access to and obtain counsel and advice from his standby counsel. I therefore respectfully dissent from the majority's judgment affirming the judgment of the Seventh District Court of Appeals. Instead, I would reverse the judgment of the court of appeals and remand this case to that court with the instruction that it determine under Crim.R. 52(A) whether the trial court's error affected Hackett's substantial rights.

## ANALYSIS

### *Denying Hackett's motion to have standby counsel seated at the defense table and available for consultation was an abuse of discretion*

{¶ 67} In *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), fn. 46, the United States Supreme Court recognized that "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." And in *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the court acknowledged that the availability of standby counsel "relieve[s] the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals."

{¶ 68} This court has similarly recognized that "[o]nce the right to counsel is properly waived, trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28. In that case, this court held:

> In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other

27

and may not be asserted simultaneously. (*Parren v. State* (1987), 309 Md. 260, 269, 523 A.2d 597, followed.)

*Id.* at paragraph one of the syllabus. Although that holding could be understood to suggest that the right to proceed pro se carries with it the right to the assistance of standby counsel, I do not read the court's opinion as recognizing a constitutional right to standby counsel. Instead, I agree with the majority that *Martin* simply recognizes the Sixth Amendment basis for the right to proceed pro se. *Martin* did not recognize a Sixth Amendment basis for the appointment of standby counsel to assist the pro se defendant.

{¶ 69} I therefore agree that the appointment of standby counsel for a self-represented defendant is permitted but is not constitutionally required. But the fact that the appointment of standby counsel is discretionary does not make the exercise of that judicial discretion impervious to review for abuse of discretion. While the participation of standby counsel may be subject to reasonable limitations that are not detrimental to a self-represented defendant, a court cannot impose unreasonable and arbitrary limitations that serve no purpose other than to interfere with the defendant's ability to consult with and obtain advice from standby counsel.

{¶ 70} Confirming the defendant's right to maintain actual control over the case he chooses to present to the jury as well as the jurors' perception that he is representing himself, the United States Supreme Court, in *McKaskle*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122, flatly rejected the suggestion that standby counsel should be "seen and not heard" unless the defendant asked for assistance, declaring that "no absolute bar on standby counsel's unsolicited participation is appropriate or was intended" by the *Faretta* court's recognition of the right of self-representation. *McKaskle* at 176-178. Noting that "[p]articipation by [standby] counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable," *id.* at 182, the court ruled that "counsel need not be excluded

altogether, especially when the participation is outside the presence of the jury or is with the defendant's express or tacit consent," *id*. at 188.

{¶ 71} In the case before us, Hackett's March 31, 2017 motion requesting "full assistance of standby counsel" asserted as follows:

> Defendant has a Constitutional right to have standby counsel seated at defense table for ease of consultation; to have standby counsel actively assist Defendant in navigating courtroom protocol and procedure, including evidentiary and constitutional matters related to admitting or objecting to the admission of evidence; and to advocate on the record with respect to procedural matters as long as standby counsel's actions neither undercut the reality nor the perception of Defendant's control of his defense. As long as Defendant is given the right to control his own defense, and his right to have his trial conducted in the Jurors' presence in a manner consistence [sic] with the perception that he is controlling his own defense, then standby counsel can proactively engage issues as long as both Defendant and standby counsel avoid acting in a manner consistent with a co-counsel or hybrid counsel relationship.[1]

---

1. The state's merit brief quotes verbatim Hackett's motion requesting "to have standby counsel actively assist Defendant in navigating courtroom protocol and procedure," "advocate on the record with respect to procedural matters," and "proactively engage issues as long as both Defendant and standby counsel avoid acting in a manner consistent with a co-counsel or hybrid counsel relationship," but conspicuously omits any reference to Hackett's express request to have standby counsel seated with him at the defense table. At oral argument, counsel for the state asserted that Hackett could have specifically requested to have standby counsel seated at defense table but it was not clear that Hackett actually wanted that. Specifically, counsel said that Hackett's motion made only "a very vague reference" to it. On the contrary, there was nothing vague in Hackett's explicit request "to have standby counsel seated at defense table for ease of consultation."

**{¶ 72}** The trial court denied Hackett's request after concluding that Hackett was really asking for hybrid representation. Citing this court's decision in *Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, the trial court acknowledged that "[h]ybrid representation differs from standby representation in that the defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial." Acknowledging that hybrid representation is not mandated by the United States Constitution, the Ohio Constitution, or case law, the trial court told Hackett, "[Y]ou have the right either to appear pro se or to have counsel, but you have no corresponding right to act as co-counsel."

**{¶ 73}** Just prior to the start of Hackett's trial, Hackett asked the trial court to "define the responsibilities or the duties of standby counsel." The following colloquy then occurred:

> THE COURT: If you decide now or during the trial that you are in over your head and ask me to have [standby counsel] step in, then he would come in as your attorney. It is nothing more and nothing less than that.
>
> THE DEFENDANT: So in essence, the only time he [has] a voice, then, is if I say I relinquish my defense as pro se.
>
> THE COURT: Not your defense. That you relinquish your choice to proceed pro se.
>
> THE DEFENDANT: Okay. So my next question would be, if I—we have a trial right now and I wish to present evidence and I don't know how, he can do nothing then, right?
>
> THE COURT: Correct.
>
> THE DEFENDANT: Is he allowed to speak now?
>
> THE COURT: Is he allowed to speak?
>
> THE DEFENDANT: Yes.

**THE COURT:** No. You filed a motion for, in effect, hybrid representation, and we've gone over this, too. What you are asking is to have his advice, his counsel, his wisdom, his experience, his education to assist you during the trial, and the Supreme Court of Ohio has clearly said that's improper, that it's hybrid representation.

(Capitalization and boldface sic.)

{¶ 74} Although in this case, the trial court and the court of appeals acknowledged that hybrid representation differs from standby representation, they in fact appear to have conflated if not equated these separate and distinct concepts in a way that is contrary to law and contrary to what Hackett expressly requested.

{¶ 75} Specifically, in standby representation, counsel is appointed to aid the self-represented defendant if and when the defendant requests help and to be available to represent the defendant in the event that termination of the defendant's self-representation is necessary. *See Faretta,* 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46. The defendant controls and conducts his own case but may consult with and accept guidance from standby counsel. *See* Colquitt, *Hybrid Representation: Standing the Two-Sided Coin on Its Edge*, 38 Wake Forest L.Rev. 55, 73-74 (2003); *see also Flagg v. State*, 272 So.3d 233, 239-240 (Ala.Crim.App.2018); *Smith v. Smith*, 22 S.W.3d 140, 152 (Tex.App.2000).

{¶ 76} Hybrid representation "consists of concurrent self-representation and representation by counsel." *See* Colquitt, 38 Wake Forest L.Rev. at 74. It is a "cocounsel" model in which the litigant and counsel actively participate in the trial process. *Id.*; *see also Flagg* at 239; *Smith* at 152.

{¶ 77} In this case, Hackett's motion sought

to have standby counsel seated at defense table for ease of consultation; to have standby counsel actively assist Defendant in

navigating courtroom protocol and procedure, including evidentiary and constitutional matters related to admitting or objecting to the admission of evidence; and to advocate on the record with respect to procedural matters as long as standby counsel's actions neither undercut the reality nor the perception of Defendant's control of his defense.

I fail to see how having standby counsel seated at defense table so that it is easier for the defendant to consult with counsel and for counsel to actively assist the defendant in navigating courtroom protocol and procedure, including evidentiary and constitutional matters related to admitting or objecting to the admission of evidence, necessarily changes the character of the representation from standby to hybrid.

{¶ 78} Indeed, when a defendant is represented by counsel who is conducting the defense, the defendant is seated at the defense table with counsel and the two may consult as necessary throughout the course of the trial proceedings, and that situation plainly does not constitute forbidden "hybrid representation." In standby representation, the roles are simply reversed: the defendant is conducting the defense, and the fact that standby counsel is seated at the defense table with the defendant to make easier any consultations that may be necessary throughout the course of the trial proceedings does not make the representation a "hybrid representation." Contrary to the trial court's suggestion, the mere fact that standby counsel can offer counsel and advice to the defendant that is drawn from counsel's wisdom, experience, and education—presumably the basis for standby counsel's appointment in the first place—does not turn standby counsel into active cocounsel with the self-represented defendant.

{¶ 79} Even if Hackett's request to allow standby counsel "to advocate on the record with respect to procedural matters" (in a manner that would not undercut

the reality or perception of Hackett's control of his defense) were considered to be a request for hybrid representation, a trial judge who can capably stop a counsel-represented defendant from trying to play lawyer at the defendant's trial can just as readily stop standby counsel from acting as cocounsel for the self-represented defendant. *See McKaskle*, 465 U.S. at 177, 104 S.Ct. 944, 79 L.Ed.2d 122, fn. 8 ("The trial judge may be required to make numerous rulings reconciling the participation of standby counsel with a *pro se* defendant's objection to that participation; nothing in the nature of the *Faretta* right suggests that the usual deference to 'judgment calls' on these issues by the trial judge should not obtain here as elsewhere"). In any case, even if the advocate-on-the-record portion of Hackett's request were considered a request for hybrid representation, that would not justify the blanket prohibition barring standby counsel from being seated at the defense table to consult with Hackett and explain basic rules of courtroom protocol so as to assist Hackett in overcoming the routine obstacles that could stand in the way of achieving Hackett's own clearly indicated goals.

{¶ 80} If standby counsel is appointed but is practically inaccessible to the self-represented defendant, then one wonders whose interest is really being served by the appointment. The appointment certainly is not serving the defendant's interest, since, at best, the defendant would have only limited access to counsel during trial recesses. Indeed, the trial court here told Hackett that standby counsel could do what Hackett requested if and only if Hackett surrendered his Sixth Amendment right of self-representation and accepted legal representation by counsel. The court said, "It is nothing more and nothing less than that."

{¶ 81} In reality, the appointment of standby counsel as it occurred here would appear primarily to benefit the *trial court* by ensuring that the trial proceedings would not come to a grinding halt if the defendant, reconsidering the wisdom of the decision to proceed pro se, requests representation by counsel. In that event, standby counsel can come in from the bleacher seats to take over the

defense (or whatever may be left of it), and the case can proceed to a verdict.  From Hackett's perspective, however, his standby counsel truly was a bystander—nothing more and nothing less.

{¶ 82} The majority says, "To be clear, there is nothing in the record that shows a separate request [by Hackett] to allow standby counsel to sit at the defense table," but then acknowledges Hackett's motion requesting "full assistance of standby counsel" that sought to have standby counsel perform what the majority characterizes as "a variety of roles at trial, including advocating on the record." Majority opinion at ¶ 17.  To be really clear, Hackett's motion *is* a part of the record in this case, and his request explicitly sought not just "to have standby counsel seated at defense table for ease of consultation" but also "to have standby counsel actively assist Defendant in navigating courtroom protocol and procedure, including evidentiary and constitutional matters related to admitting or objecting to the admission of evidence" and "to advocate on the record with respect to procedural matters as long as standby counsel's actions neither undercut the reality nor the perception of Defendant's control of his defense."  All of those requests were fully consistent with the permissible role of standby counsel as recognized by the United States Supreme Court in *McKaskle,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122.  Contrary to the majority's suggestion, Hackett's request required no "parsing out of this far-reaching motion," nor was any "separate request" required. *See* majority opinion at ¶ 18 and 17.  Hackett's motion said it all.

{¶ 83} The majority says, "There is no indication in the record that after the court denied his motion for the full assistance of standby counsel, Hackett followed up with a specific request for standby counsel to sit at the defense table."  Majority opinion at ¶ 18.  But no further action or exception was required from Hackett based on Crim.R. 51, which since 1973 has stated: "An exception, at any stage or step of the case or matter, is unnecessary to lay a foundation for review, whenever a matter

has been called to the attention of the court by objection, *motion*, or otherwise, *and the court has ruled thereon."* (Emphasis added.)

{¶ 84} The majority then says that in his appeal to the Seventh District Court of Appeals, Hackett "never argued that the trial court abused its discretion when placing limitations on standby counsel, but instead focused solely on the alleged constitutional violation." Majority opinion at ¶ 18. But Hackett's appellate brief expressly argued that "standby counsel should be at defense table both to facilitate communication with Defendant and to minimize trial disruptions otherwise caused if constant recesses are needed to permit consultation." And in his brief in this court, he expressly argues that the trial court's limitation on standby counsel was an abuse of discretion. Hackett identified and preserved for appellate review the *error* that occurred at his trial. I see no reason to ignore a legal error just because Hackett may have earlier predicated his argument on an incorrect legal theory.

{¶ 85} Judicial discretion is abused when the court's act is unreasonable, arbitrary, or unconscionable. *See State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 106. " 'A decision is unreasonable if there is no sound reasoning process that would support that decision.' " *Id.,* quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An arbitrary decision is one that is made without applying adequate determining principles, rules, or standards and/or without regard for the facts or circumstances. *See State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12.

{¶ 86} In this case, the trial court erroneously found Hackett's request for assistance from standby counsel to be equivalent to a request for forbidden hybrid representation. Based on that erroneous assessment, it functionally prevented Hackett from having ready access to standby counsel. Because the trial court's

limitation on standby counsel's participation in Hackett's trial was without legitimate reason or basis, it was an abuse of judicial discretion.

{¶ 87} The majority says this abuse-of-discretion claim is not tethered to any legal standard. Majority opinion at ¶ 19. But abuse of discretion *is* the legal standard: If the court's discretionary ruling is unreasonable, arbitrary, or unconscionable, it is an abuse of discretion. *Ford,* at ¶ 106. The majority suggests that because the trial court had discretion to decline to appoint standby counsel, it could not abuse its discretion by limiting counsel's role. Stated differently, according to the majority, if a court has discretion, then it has discretion, so the exercise of that discretion cannot be an abuse of discretion. As a tautology, the majority's reasoning is unassailable. But as a legal rationale, it falls far short of the mark.

{¶ 88} Once a trial court exercises its discretion to appoint standby counsel, it may not then "attach a metaphorical asterisk by imposing limitations on the defendant's access to his attorney's advice and counsel." *Paul v. State*, 152 So.3d 635, 644 (Fla.App.2014) (Ciklin, J., concurring). In this case, I fail to see any legitimate justification offered by the trial court, the court of appeals, or today's majority for the trial court's making standby counsel virtually inaccessible to Hackett during critical stages of Hackett's criminal trial.

### *The state has the burden under Crim.R. 52(A) to demonstrate that the trial court's error did not affect Hackett's substantial rights*

{¶ 89} Believing as I do that the trial court committed error in denying Hackett's request that he be able to consult with his appointed standby counsel, the question then is whether that error had any consequential effect on Hackett's trial so as to require reversal of his criminal conviction. In answering that question, a reviewing court must first determine whether the error was a "trial error" or a "structural error." Trial errors are errors that occur during the presentation of the case and may be quantitatively assessed in the context of other evidence presented

in order to determine whether the error was harmless beyond a reasonable doubt; structural errors are errors to which the harmless-error standard does not apply, because they affect the framework within which the trial proceeds as opposed to being simply errors in the trial process itself. *See State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, citing *Arizona v. Fulminante*, 499 U.S. 279, 307-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶ 90} Structural errors that require automatic reversal include the denial of the Sixth Amendment right to counsel, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the denial of the corelative Sixth Amendment right to forgo counsel and represent oneself, *see McKaskle*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122. The trial court here did not commit either of those constitutional errors. Accepting for purposes of this discussion that it was a trial error, the trial court's erroneous limitation on Hackett's access to standby counsel is subject to analysis under Crim.R. 52.

{¶ 91} Crim.R. 52 distinguishes between errors to which the defendant objected at trial and errors to which the defendant failed to object at trial. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. If the error is one to which the defendant objected at trial, an appellate court reviews the error under the Crim.R. 52(A) harmless-error standard and "the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." (Emphasis sic.) *Id*. at ¶ 15. If the error is one to which the defendant failed to object at trial, an appellate court reviews the error under the Crim.R. 52(B) plain-error standard and "the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis sic.) *Id*. at ¶ 14.

{¶ 92} In this case, Hackett's March 31, 2017 motion, in which he made specific requests to have access to and assistance from standby counsel, was denied at an April 13, 2017 hearing and again just prior to the commencement of trial. In

accordance with the trial court's ruling, standby counsel did not sit at the defense table for lawful consultation.

{¶ 93} Because Hackett's motion clearly raised this issue for the trial court's consideration, if on appeal, the court of appeals determined that the trial court erred in denying the motion, then the state would bear the burden under Crim.R. 52(A) of demonstrating to the court of appeals that the trial court's error did not affect Hackett's substantial rights. Because the court of appeals determined, however, that the trial court did not improperly limit the role of standby counsel, it did not conduct a harmless-error analysis. I would therefore remand this case to the court of appeals with the instruction that it conduct the analysis required by Crim.R. 52(A).

## CONCLUSION

{¶ 94} I believe that the court of appeals erred in concluding that the trial court did not improperly limit the role of and Hackett's access to standby counsel. I would accordingly reverse the judgment of the court of appeals and remand this case to that court with the instruction that it determine under Crim.R. 52(A) whether the trial court's error affected Hackett's substantial rights.

_____

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging affirmance for amicus curiae Attorney General Dave Yost.

_____