[Cite as *State v. Dinka*, 2013-Ohio-4646.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.   CA2013-03-021 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/21/2013 |
| - vs - | | |
| | : | |
| JOHN C. DINKA, | : | |
| | | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2013CRB00032

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Marshall G. Lachman, 75 North Pioneer Boulevard, Springboro, Ohio 45066, for defendant-appellant

**M. POWELL, J.**

{¶ 1}  Defendant-appellant, John C. Dinka, appeals his conviction in the Warren County Court for domestic violence.  For the reasons set forth below, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this Opinion.

{¶ 2}  On January 14, 2013, Dinka was arrested and charged with one count of

domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree. The charge stemmed from a January 9, 2013 incident between Dinka and his stepdaughter, Shelby Howard, where Dinka threatened Howard and her boyfriend with a shotgun.

{¶ 3} The trial court's file contains a document entitled "Docket/Judgment Entry" dated January 14, 2013 and journalized on January 15, 2013 indicating Dinka entered a not guilty plea to fourth-degree misdemeanor domestic violence. This "Docket/Judgment Entry" does not reflect the nature of the hearing or appearances by Dinka, an attorney on Dinka's behalf or any other person. In fact, the record does not disclose that Dinka was ever arraigned in accordance with Crim.R. 10.

{¶ 4} On January 17, 2013, Dinka appeared for a preliminary hearing represented by an attorney. The record is unclear whether Dinka's attorney was appointed by the court or retained by Dinka. Although no such charge appears of record, the matter was apparently scheduled for a preliminary hearing upon a felony charge of having weapons while under disability in violation of R.C. 2923.13 based upon Dinka's possession of the shotgun and a belief that Dinka was previously convicted of a felony assault charge. However, the prosecutor represented that Dinka's prior conviction was not a felony and moved to dismiss the weapons while under disability charge. Subsequent discussion between the trial court, Dinka, and the prosecutor suggests the trial court dismissed the weapons while under disability charge even though the record is devoid of a specific ruling on the matter. As the preliminary hearing continued, the trial court discussed Dinka's lengthy criminal record and set bond. The prosecutor moved to amend the domestic violence charge from a fourth-degree misdemeanor to a first-degree misdemeanor. The trial court did not rule upon the motion to amend. The trial court did not ask whether Dinka was indigent, did not inform him of his right to an attorney, and did not inquire into whether he wanted representation. A pretrial hearing was scheduled for January 24, 2013.

{¶ 5} On January 24, 2013, Dinka appeared before the trial court for a pretrial hearing with a public defender. No affidavit of indigency or appearance of counsel was filed at this time. Dinka did not wish to waive his right to a speedy trial and requested his case be set for trial as soon as possible. As Dinka was unable to post bond, a trial was scheduled for February 12, 2013. In the interim, the record continued to reflect that Dinka was charged with a fourth-degree misdemeanor until the prosecutor moved on January 29, 2013 to amend the charge to second-degree misdemeanor domestic violence. The trial court granted this motion to amend on February 5, 2013 by marginal notation upon the prosecutor's motion. Nevertheless, when Dinka appeared for trial on February 12, 2013, the prosecutor informed the court of its intention to proceed on the fourth-degree misdemeanor domestic violence charge.

{¶ 6} On February 12, 2013, Dinka appeared for trial with his public defender and the following exchange took place between the trial court and Dinka:

> COURT: All right, we set it for a trial today, probably with a public defender, not knowing whether or not you were going to be able to retain your own attorney. Have you made arrangements for the public defender to fill out the paperwork to see if you qualify?
>
> DINKA: Yeah, but I haven't filled out the paperwork. Under the circumstances I think I'm going to try to obtain an attorney.
>
> COURT: Today's the trial.
>
> DINKA: Well, I've tried to contact the attorney, haven't spoken to [my public defender] about the trial at all and we're not prepared. I've got stuff I need subpoenaed, people I need subpoenaed.
>
> COURT: Do you have the financial affidavit filled out?
>
> DINKA: No, I don't, it's sitting in the chair there.
>
> COURT: All right, so do you want the public defender to represent you or not? Today's the trial Mr. Dinka.
>
> DINKA: I'd like to get a continuance.

\* \* \*

COURT: But you want a continuance so you can hire an attorney?

DINKA: Correct.

COURT: But you haven't hired one?

DINKA: I'm trying to.

\* \* \*

COURT: Mr. Dinka, this is it, this is the trial, so it's going to be this morning with you representing yourself or you can have the public defender, assuming that you do qualify. \* \* \* Did you know today was the trial?

DINKA: Yeah, but I tried \* \* \* to contact the attorney so I can let her know I need a subpoena and I haven't received anything. And when I called I was told that the public defender don't (sic) talk to you until the day of trial, and how can you get a case together if you can't speak to your attorney?

\* \* \*

I'm just not happy with the job my public defender was doing. I tried to speak to her and they (sic) could speak to you before the trial and find out what's going on.

COURT: All right. So [public defender], any inclination that you had or might have had on representing Mr. Dinka, I'm being told he doesn't want public defender service so that will be granted. So your name will be removed from the docket. I'm going to reset this for two weeks from today, that's the trial date. It will not be continued. You file a jury demand, that's different, obviously it gets reset but the trial is in two weeks. You find an attorney to represent you in two weeks, that's available in two weeks, you understand that?

DINKA: Yeah.

{¶ 7} On February 26, 2013, Dinka appeared for trial without counsel. Dinka explained he had contacted numerous attorneys but was unable to afford one. The following conversation then occurred between the trial court and Dinka:

COURT: So are you ready to proceed without an attorney then?

DINKA: Not really. I have PTSD, which I'm not able to, you know, under stressful situations my mind just kind of quits.[1]

COURT: All right.

DINKA: So I'm not really able to represent myself.

COURT: Well, today we're set for the trial and you made no arrangements, you did not want the public defender to represent you so she was discharged from her duty. I gave you a two week continuance, plenty enough time to secure counsel. The fact that you're here without counsel the court's going to consider that to be a waiver of counsel so we're going to proceed this afternoon.

The trial court then proceeded with Dinka's bench trial with Dinka representing himself. At multiple times during the trial, Dinka stated he was having difficulty representing himself, as his brain was "quitting" due to his "PTSD." At the conclusion of the evidence, the trial court found Dinka guilty of fourth-degree misdemeanor domestic violence. Dinka was sentenced to a 23-day jail term with credit for time served and one year of community control supervision. Dinka was also ordered to undergo drug, alcohol, and mental health assessments, pay a fine, and forfeit the shotgun.

{¶ 8} From his conviction, Dinka appeals, raising two assignments of error:

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF DINKA, AND DENIED DINKA HIS RIGHT TO COUNSEL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE [I] OF THE OHIO CONSTITUTION.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT'S VERDICT OF GUILTY ON THE CHARGE OF

---

1. We assume that Dinka is referring to post traumatic stress disorder.

DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In his first assignment of error, Dinka contends the trial court erred by discharging Dinka's public defender and requiring him to proceed pro se in violation of his constitutional rights. Specifically, Dinka asserts his failure to obtain counsel after a two-week continuance of his trial date was not a knowing, intelligent, and voluntary waiver of his right to counsel.

{¶ 14} The Sixth Amendment to the United States Constitution states, in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." "'[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.'" *State v. Fields*, 12th Dist. Warren Nos. CA97-09-100, CA97-09-101, and CA97-11-118, 1998 WL 372367, *2 (July 6, 1998), quoting *Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792, 796 (1963). "The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant in a state criminal proceeding the constitutional right of self-representation when the defendant voluntarily, knowingly, and intelligently so elects." *State v. Doyle*, 12th Dist. Brown No. CA2005-11-020, 2006-Ohio-5373, ¶ 8, citing *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975). "'Courts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel.'" *Fields* at *3, quoting *State v. Dyer*, 117 Ohio App.3d 92, 96 (2d Dist.1996).

{¶ 15} "[T]o establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *Gibson* at paragraph two of the syllabus; *State v. Overholt*, 77 Ohio App.3d 111, 116-17 (3d Dist.1991). In order for the defendant to "competently and

intelligently choose self-representation, he must be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Internal quotations omitted.) *State v. Petaway*, 3d Dist. Logan No. 8-05-11, 2006-Ohio-2941, ¶ 8, quoting *Faretta* at 835.

{¶ 16} Generally, Ohio courts look to see whether, under the totality of the circumstances, the defendant's waiver of his right to counsel was voluntarily, knowingly, and intelligently given. *State v. Thompson*, 180 Ohio App.3d 714, 2009-Ohio-185, ¶ 8 (3d Dist.). "To discharge this duty in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Gibson* at 377. For a waiver of counsel to be valid, such waiver must be made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Fields* at *2-3, citing *Overholt* at 117 and *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 323 (1948).

{¶ 17} Pursuant to Crim.R. 44(B), when a defendant has been charged with a petty offense, as in the case at hand, the trial court may assign counsel to represent him. However, "when a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(B); *Fields* at *2 (holding that, absent a knowing, intelligent, and voluntary waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial).

{¶ 18} Waiver of counsel shall be made in open court, and the advice of the trial court

- 7 -

and waiver of the defendant shall be recorded as provided in Crim.R. 22.[2] Crim.R. 44(C). "The requirements of Crim.R. 44 and 22 are mandatory, and failure to comply with these procedures constitutes error." *State v. Constable*, 12th Dist. Clermont No. CA2003-12-107, 2005-Ohio-1239, ¶ 31, citing *State v. Krivinsky*, 12th Dist. Warren No. CA97-09-098, 1998 WL 314384, *2 (July 6, 1998).

{¶ 19} In the present case, our review of the record reveals Dinka was not fully advised by the trial court of the nature of the charges against him, the statutory offenses included with it, the range of allowable punishments thereunder, the possible defenses to the charge, the circumstances in mitigation of the charge, and all other factors essential to a broad understanding of the whole matter. The record fails to demonstrate Dinka was properly arraigned and provided the advisements required by Crim.R. 10. On numerous occasions, Dinka stated he had never been informed of "what he was being charged with."[3] The degree of the offense with which Dinka was charged was in flux (i.e., felony offense, first-degree misdemeanor, second-degree misdemeanor, or fourth-degree misdemeanor)

---

2. Crim.R. 22 provides, "In petty offenses all waivers of counsel required by Rule 44(B) shall be recoded."

3.        {a} For example, on February 12, 2013, Dinka was told for the first time what charge the trial scheduled for that day would proceed under:

> {b}  DINKA:  I'm not even sure exactly what I'm being, what I'm being charged with, I don't know.  * * * I mean, first the charge was aggravated menacing then it was an M-4 domestic violence and then it was an M-1, then it was back to an M-4 again and then back to an M-1.  Now I'm told it was an M-2. I'm not even sure what I'm being charged with.

> {c}  STATE:  Your Honor, we're going forward on the M-4.

> {d}  DINKA:  So now it's an M-4 sir?

> {e}  STATE:  That's correct.

> {f}  COURT:  That was the original charge.

> {g}  DINKA:  Yeah.  Well, the public defender just told me five minutes ago it was an M-2.

> {h}  COURT:  That's because I was going to grant that motion.

throughout the proceedings and, consequently, so were the allowable punishments. The trial court never determined whether Dinka was entitled to court-appointed counsel, instead stating at Dinka's first trial date that the trial would "probably" proceed with a public defender if Dinka "qualified." Furthermore, Dinka never waived his right to counsel in open court as required by Crim.R. 22 and 44. Rather, Dinka repeatedly stated he was unable to represent himself due to "PTSD."

{¶ 20} Based upon our thorough review of the record, we find the trial court committed prejudicial error by imposing a term of confinement upon Dinka when he was not represented by counsel and where he did not knowingly, intelligently, and voluntarily waive the assignment of counsel. We further find, due to the confusion permeating this entire proceeding, Dinka's conduct did not constitute an implied waiver of his right to counsel. In so holding, we find this case analogous to our decisions in *State v. Fields*, 1998 WL 372367, and *State v. Constable*, 2005-Ohio-1239.

{¶ 21} In *Fields*, the defendant was found guilty of domestic violence and driving under the influence of alcohol after a bench trial wherein he was required to represent himself. *Fields* at *1. We found: (1) a valid waiver of counsel by the defendant did not exist as required by Crim.R. 44; (2) the defendant had stated numerous times he did not want to proceed to trial without representation; and (3) there was nothing in the record to show the trial court advised the defendant of the repercussions of self-representation. *Id.* at *2-3. We concluded "that the record does not adequately support the conclusion that [the defendant] validly waived his right to counsel, and therefore 'no sentence of confinement may be imposed upon him * * *.'" *Id.* at *3, citing Crim.R. 44(B).

{¶ 22} In *Constable*, the defendant was found guilty of menacing, a fourth-degree misdemeanor, after a jury trial wherein he was required to represent himself. *Constable* at ¶ 1. At arraignment, the defendant was appointed an attorney due to his indigent status. *Id.* at

¶ 2. Four months after arraignment, the defendant appeared for trial and informed the court he wished to "fire" his court-appointed attorney and have the court appoint a new attorney. *Id.* at ¶ 4. After listening to the defendant's reasons for wanting his attorney fired, the court found the attorney competent and determined it would not appoint a new attorney for the defendant. *Id.* "The court then gave [the defendant] three options: (1) proceed with his appointed attorney; (2) represent himself; or (3) ask for a continuance so that he could attempt to hire a new attorney." *Id.* Concluding that he did not want to represent himself, nor have his court-appointed attorney represent him, the defendant requested a continuance in order to retain counsel. *Id.* The trial court then allowed the appointed attorney to withdraw from the case and granted a two-month continuance. *Id.*

{¶ 23} After the continuance, the defendant appeared before the trial court without an attorney, explaining he had attempted to retain counsel but was unable to afford representation. *Id.* at ¶ 5. The court informed the defendant that, because he had fired his court-appointed attorney and had not secured new representation, the defendant was "on his own." *Id.* The case proceeded to trial by jury with the defendant representing himself. *Id.* He was found guilty of menacing and appealed his conviction, arguing that he was deprived of his right to counsel under the Sixth Amendment and that he did not voluntarily waive this right. *Id.* at ¶ 6-12.

{¶ 24} We found the defendant had not waived his right to counsel and, therefore, the trial court erred in requiring the defendant to proceed to trial without representation. *Id.* at ¶ 15. Specifically, we determined that, while the defendant was not entitled to an attorney of his choosing, he was nevertheless entitled to representation and the trial court "was required to ensure that, absent a valid waiver of counsel, [the defendant] had *an* attorney to represent him." (Emphasis sic.) *Id.* at ¶ 15, 29, citing *State v. Marinchek*, 9 Ohio App.3d 22, 23 (9th Dist.1983). As a "meaningful exchange" did not take place between the defendant and the

- 10 -

trial court "in which [the defendant] validly waived his right to counsel," the trial court erred in refusing to appoint counsel to represent the indigent defendant. *Id.* at ¶ 33.

**{¶ 25}** We find the logic set forth in *Fields* and *Constable* controlling in this case. Dinka was never fully advised by the trial court of the dangers and disadvantages of self-representation. Furthermore, Dinka's indigency status was never determined by the trial court.[4] Finally, the trial court construed Dinka's conduct as a waiver of his right to counsel in contravention of Crim.R. 22 and 44, as there is nothing in the record to indicate Dinka was advised by the trial court and then competently and intelligently chose to waive his right to counsel. Though it is true that waiver of the right to counsel can be implied by the conduct of the defendant attempting to frustrate or delay the judicial process, we do not find Dinka's conduct rose to such a level. *See State v. Westfall*, 12th Dist. Butler No. CA97-05-104, 1998 WL 314366, *3 (June 15, 1998) (holding that the defendant's failure to obtain new counsel after a three-week continuance and filing of a request for continuance on the day of trial was an attempt to delay the judicial process and constituted an implied waiver of counsel).

**{¶ 26}** We distinguish our holding in this case with the cases relied upon by the state. In *Westfall*, we found the trial court did not abuse its discretion in denying the defendant's request for a continuance in order to obtain an attorney and inferring the defendant waived her right to counsel because her actions could "be reasonably perceived as taking advantage of the trial court by claiming [his or her] right to counsel in order to frustrate or delay the judicial process." *Id.* at *3, quoting *State v. Hook*, 33 Ohio App.3d 101, 104 (10th Dist.1986). The defendant was given almost three weeks before her trial date to find an attorney, was not indigent, and had previously hired a law firm to represent her in the matter. In the

---

4. We note that, while it is unclear in the record whether Dinka was indigent and entitled to representation at the time of his bench trial, Dinka successfully retained court-appointed counsel for his appeal after submitting an affidavit of indigency.

present case, Dinka was given two weeks to find representation after being released from jail just days before and his indigency status was left undetermined. Though Dinka was apparently provided a public defender, he claims he was never able to make contact with her and the trial court's own statements at the first trial date indicate that the public defender had not yet been assigned to the case but would "probably" be assigned if it was determined Dinka was indigent.[5]

{¶ 27} In *City of Lebanon/State v. Dennis*, 12th Dist. Warren No. CA93-08-063, 1994 WL 160172 (May 2, 1994), we found the trial court did not err in concluding that the defendant had impliedly waived the right to counsel where the defendant "repeatedly refuse[d] to take effective steps to retain counsel." *Id.* at *2. The trial court had advised the defendant of his right to counsel, inquired as to whether the defendant was indigent and in need of court-appointed counsel, repeatedly informed the defendant of the dangers and disadvantages of self-representation, and granted the defendant two continuances for the purposes of retaining counsel. *Id.* In the case at bar, the trial court never advised Dinka of his right to counsel on the record, never inquired into whether Dinka was indigent, and never informed Dinka of the dangers and disadvantages of self-representation.

{¶ 28} Accordingly, we sustain Dinka's first assignment of error. Dinka's remaining assignment of error is dismissed as moot pursuant to App.R. 12(A)(1)(c). The cause is remanded to the trial court for further proceedings consistent with this opinion, where Dinka "must be afforded a new trial wherein he is to be represented by counsel, unless he makes a knowing and voluntary waiver thereof."[6] *State v. Fields*, 1998 WL 372367 at *3, citing *State*

---

5. We note that it is not unreasonable for a defendant to wish to speak to his trial counsel, whether court-appointed or retained, prior to the day of trial.

6. In remanding, we note that the trial court was not required to remove Dinka's public defender from the record simply because Dinka was displeased with her representation. Had the court determined Dinka's reasons for wanting a new attorney were meritless, the court could have required Dinka to proceed with the public defender. *See State v. Cowans*, 87 Ohio St.3d 68, 72-73, 1999-Ohio-250; *Fields* at *3.

*v. Dressler*, 11th Dist. Portage No. 95-P-0001, 1997 WL 269193, *13 (May 2, 1997).

{¶ 29} Reversed and remanded.


RINGLAND, P.J., and PIPER, J., concur.