[Cite as *State v. Colquitt*, 2022-Ohio-4448.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-05-028 |
| | : | O P I N I O N |
| - vs - | | 12/12/2022 |
| | : | |
| PIERRE COLQUITT, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR37718

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**PIPER, J.**

{¶1} Appellant, Pierre Colquitt, appeals from the judgment of the Warren County Court of Common Pleas. For the reasons discussed below, we affirm in part but reverse Colquitt's conviction and remand the case for further proceedings.

{¶2} In the early morning hours of January 2021, Colquitt knocked on the front door of Christopher Davis' residence to ask for directions. After getting directions from Davis,

Colquitt returned to his vehicle but remained in his car on Davis' property. Davis' residence was in an isolated rural area, and he found Colquitt's behavior and continued presence to be unusual. Upon retrieving a firearm for protection, Davis called the police to report the circumstances.

{¶3} Police Sergeant Nicholas Caito responded to the call. When Sergeant Caito approached Colquitt's vehicle in his cruiser, Colquitt turned on his headlights and began to drive toward Sergeant Caito. Sergeant Caito stepped out of his cruiser and positioned himself behind his open driver-side door, directing Colquitt to stop his vehicle. Colquitt continued to drive toward Sergeant Caito, forcing Sergeant Caito to jump back into his cruiser to avoid being hit by Colquitt's vehicle, which struck the driver-side door of the cruiser.

{¶4} Colquitt proceeded down the long driveway with Sergeant Caito in pursuit. A high-speed chase involving two additional police vehicles ensued. After Colquitt crashed his vehicle, he fled into a golf course while being chased on foot. Colquitt ignored several commands to stop throughout the foot chase, and eventually one of the police officers apprehended Colquitt by tackling him. A search incident to Colquitt's arrest yielded drug paraphernalia and cocaine.

{¶5} Colquitt was charged with felonious assault, failure to comply, obstruction, possession of cocaine, and possession of drug paraphernalia. Colquitt originally retained counsel but later asked his counsel to withdraw from the case. At his arraignment, Colquitt informed the court that he was representing himself. The court appointed Joseph Auciello, Esq. as Colquitt's standby counsel. Eventually Colquitt was found guilty on all charges except for felonious assault and was sentenced to 36 months in prison. Throughout the trial, as well as during pre- and post-trial proceedings, both Colquitt and attorney Auciello participated in various aspects of Colquitt's defense.

{¶6} Colquitt now appeals his conviction, raising four assignments of error for our review. We address the assignments out of order, with the first and second assignments discussed together.

{¶7} Assignment of Error No. 3:

{¶8} THE TRIAL COURT ERRED WHEN IT FAILED TO PROVIDE COLQUITT WITH A COPY OF THE INDICTMENT PRIOR TO HIS ARRAIGNMENT.

{¶9} In his third assignment of error, Colquitt argues that the trial court erred in failing to provide him with a copy of his indictment prior to his arraignment pursuant to Crim.R. 10(A) and by failing to inform him of his rights pursuant to Crim.R. 10(C). He asserts that these oversights "created confusion about his representation and prevented him from preparing his case as his own attorney."

{¶10} Crim.R. 10(A) provides that "[t]he defendant shall be given a copy of the indictment" at the arraignment. In addition, when a defendant not represented by counsel is brought before a court and called upon to plead, the judge "shall cause the defendant to be informed" and " shall determine that the defendant understands" that (1) he has a right to retain counsel, (2) he has a right to counsel, and the right to secure counsel throughout the proceeding, which will be assigned to him if he is unable to retain counsel, (3) he has a right to bail, and (4) he need not make any statement at any point in the proceeding, but any statement made can and may be used against him. Crim.R. 10(C).

{¶11} Despite the mandatory language of the statute, Ohio courts have held that a defendant must show some prejudice resulting from the arraignment in order to warrant reversal. *State v. Bonnell*, 61 Ohio St. 3d 179, 182 (1991) (rejecting appellant's proposition of law because appellant suffered no prejudice based on the trial court's failure to properly follow the requirements of Crim.R. 10(A) and (C)); *State v. Hawkins*, 10th Dist. Franklin No. 97APA06-740, 1998 Ohio App. LEXIS 1111, *6 (1998) (finding that because appellant pled

not guilty, made no incriminating statements, and lost no crucial rights at his arraignment, there was no prejudice); *State v. Stuber*, 71 Ohio App. 3d 86, 90 (3d Dist.1990) (finding that "if indeed the trial court omitted some or all the requirements of Crim.R. 10 concerning advice to him by the court of his rights in the proceedings to follow," appellant has suffered no prejudice, and "without prejudice to appellant, the error claimed is harmless.").

{¶12} Though Colquitt was never provided a copy of the indictment, the trial court did read the charges to him. Colquitt argues that because he was not provided with a copy, he was unable to prepare his case. Seeing as how Colquitt was informed of the charges at the arraignment and plead not guilty, we find that Colquitt failed to demonstrate any prejudice from not being provided with a copy of the indictment.

{¶13} In that same vein, Colquitt fails to demonstrate how the trial court's failure to comply with Crim.R. 10(C) resulted in any prejudice. Colquitt states that the court's failure to advise him of his rights "created confusion about his representation" and "prevented him from preparing his case as his own attorney." While there was certainly confusion surrounding Colquitt's pro se representation, the confusion was not the result of the court's failure to advise him of his rights at the arraignment. Further, he made no incriminating statements at the arraignment. Accordingly, Colquitt's third assignment of error is overruled.

{¶14} Assignment of Error No. 4:

{¶15} THE TRIAL COURT ERRED WHEN IT FOUND THAT COLQUITT WAS FLEEING AFTER COMMITTING A FELONY UNDER R.C. 2921.331.

{¶16} In his fourth assignment of error, Colquitt argues that the trial court erred by finding Colquitt guilty of felonious failure to comply. Specifically, he argues that the court erred when it "inferred" that Colquitt had cocaine in his possession at the time he fled from the police.

{¶17} Failure to comply is a misdemeanor unless it can be shown that the defendant was fleeing immediately after committing a felony. R.C. 2921.331 states that no person "shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). The statute further states that "a violation of division (B) of this section is a felony of the fourth degree if the jury or judge as trier of fact finds by proof beyond a reasonable doubt that, in committing the offense, the offender was fleeing immediately after the commission of a felony." R.C. 2921.331(C)(4). Colquitt does not dispute the court's findings under division (B). He only takes issue with the state's evidence regarding division (C)(4), arguing that the state failed to put forth evidence demonstrating that Colquitt was in possession of cocaine at the time he fled from the police.

{¶18} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 21. On review, an appellate court examines the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Id.* Thus, we must ask ourselves whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph two of the syllabus. We must also "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St. 3d 73, 93 (2014).

{¶19} The state presented the testimony of Sergeant Caito, who testified to the following. Sergeant Caito "received a dispatch for a suspicious person on [Davis'] property." Dispatch described to Sergeant Caito that "something wasn't right" and that the person was "possibly under the influence of drugs or alcohol." After locating Colquitt's vehicle on Davis'

- 5 -

property, Sergeant Caito "knew something was off just by the way the vehicle was being operated and the mannerisms of the driver in the vehicle."

{¶20} After Sergeant Caito told Colquitt to stop his vehicle, Colquitt drove into the driver side door of Sergeant Caito's cruiser. Sergeant Caito pursued Colquitt, who drove at speeds of 80 to 90 miles per hour while passing cars in the left lane on a double yellow line road. The chase continued on foot with two police officers in pursuit. Sergeant Caito gave orders to Colquitt to stop running, to get on the ground, and to show his hands. Sergeant Caito eventually deployed his taser, but it had no effect. Colquitt then pulled his left hand up to his face and appeared to put something in his mouth. Sergeant Caito deployed his taster once more, with no effect, and then one of the police officers tackled Colquitt to the ground. Sergeant Caito assisted the officer in securing Colquitt, and they immediately searched his person. The search revealed both a pipe and a bag of cocaine.

{¶21} Eric Wallace, one of the police officers involved, also testified. He stated that while they were in pursuit of Colquitt on foot, Colquitt reached for something in his pocket. At that point, Wallace drew his firearm and activated the light. He saw Colquitt with his hand in his pocket. Colquitt pulled something out and "it appeared to [Wallace] that [Colquitt] was smoking something." Ryan Frasher, the other police officer, testified that while in pursuit of Colquitt on foot, Colquitt ignored commands from police to stop. At one point, Colquitt did stop running, but "he was digging around in his pockets."

{¶22} Based on this evidence, the trial court found that Colquitt "committed the felony offense of possession of cocaine" and "that he was fleeing immediately after the commission of that felony." The court stated that "[i]t's reasonable to infer, as I have done, that [Colquitt] had possession of that cocaine at the time he started this venture of trying to elude the police." Appellant argues that there was no evidence to show where the cocaine

came from, and that there was no evidence showing that Colquitt was in possession of the cocaine while he was fleeing from the police. We find no merit to this argument.

{¶23} There is no evidence to even remotely suggest that Colquitt did not possess the cocaine when the chase commenced. Circumstantial evidence "is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Shabazz*, 146 Ohio St. 3d 404, 408 (2016). Further, it is within the province of the factfinder to draw reasonable inferences from the evidence presented. *Id.* Given that Sergeant Caito was in pursuit of Colquitt from the time he arrived on Davis' property until the time Colquitt was apprehended on the golf course, it was reasonable for the court to conclude that Colquitt was in possession of both the pipe and the cocaine while he was fleeing from the police. We will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Tibbetts*, 92 Ohio St. 3d 146, 162 (2001). Accordingly, appellant's fourth assignment of error is overruled.

{¶24} Assignment of Error No. 1:

{¶25} THE TRIAL COURT ERRED BY ALLOWING COLQUITT TO REPRESENT HIMSELF WITHOUT ENSURING THAT HIS WAIVER OF COUNSEL WAS KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY MADE.

{¶26} Assignment of Error No. 2:

{¶27} THE TRIAL COURT ERRED IN THAT IT ALLOWED STANDBY COUNSEL AND COLQUITT TO ENGAGE IN HYBRID REPRESENTATION.

{¶28} In his first assignment of error, Colquitt argues that the trial court never ensured that he fully understood and intelligently relinquished his right to counsel. Further, Colquitt argues that the trial court never obtained a signed waiver of counsel. In his second assignment of error, Colquitt asserts that he never waived his right to self-representation

and that the court erred in allowing Colquitt and attorney Auciello to engage in hybrid representation.

## WAIVER OF COUNSEL

**{¶29}** The Sixth Amendment guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation. *State v. Hundley*, 162 Ohio St. 3d 509, 529 (2020). In serious offense cases, counsel shall be assigned "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."[1] CrimR. 44(A). A defendant's request to waive this right to counsel must be unequivocal and must explicitly request self-representation. *State v. Cassano*, 96 Ohio St. 3d 94, 100 (2002). The waiver of counsel "shall be in open court and the advice and waiver shall be recorded." Crim.R. 44(C).

**{¶30}** In serious offense cases, the waiver must also be in writing. Crim.R. 44(C). The Ohio Supreme Court has held that "[w]hile literal compliance with Crim.R. 44(C) is the preferred practice, the written waiver provision of Crim.R. 44 is not a constitutional requirement, and, therefore * * * trial courts need demonstrate only substantial compliance." *State v. Martin*, 103 Ohio St. 3d 385, 392 (2004). A trial court substantially complies with Crim.R. 44(A) by "making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *Id.*, *reaffirming State v. Gibson*, 45 Ohio St. 2d 366 (1976), paragraph two of the syllabus; *State v. Fluhart*, 12th Dist. Clermont No. CA2020-12-068, 2021-Ohio-3560, ¶ 27 ("To establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [a] defendant fully understands and intelligently relinquishes that right.").

---

1. A "serious offense" means any felony and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months.

{¶31} There is a strong presumption against waiver of the right to counsel, and thus Ohio courts generally assess the requirements of waiver under a totality of the circumstances approach. *State v. Kievman*, 12th Dist. Clermont No. CA2013-11-081, 2014-Ohio-3008, ¶ 15. This approach requires that the judge "investigate as long and as thoroughly as the circumstances of the case before him demand." *Id.* For the waiver to be valid, it must be made "with apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *State v. Dinka*, 12th Dist. Warren No. CA2013-03-021, 2013-Ohio-4646, ¶ 16.

{¶32} As a threshold matter, we note that Colquitt requested to represent himself with appointed counsel assigned as standby counsel. At arraignment, the trial court informed Colquitt of the charges in the indictment. The trial court then asked Colquitt if he needed the court to appoint an attorney to represent him. Colquitt responded, "No sir. Currently I'm representing myself. I'll take a court appointed to assist me on standby if that's okay with the court." In response, the trial court said, "Yes, we'll do that." There was no further discussion at the arraignment regarding Colquitt's waiver of counsel.

{¶33} At the start of Colquitt's pretrial hearing in October of 2021, the court addressed Colquitt by stating, "You were arraigned in this court and an attorney was appointed to represent you in this court. If you choose to represent yourself, we just have to go over several things. And standby counsel, if you do represent yourself, is a good idea, but it makes it very difficult for the attorney to do their job." Thereafter, Colquitt stated that he "told the courts that I was representing myself [since] day one," and that "this court was well aware that I'm representing myself * * * when I asked for standby counsel at this indictment hearing." The judge, however, never advised Colquitt of his right to counsel nor

engaged in an inquiry to determine if Colquitt knowingly, intelligently, and voluntarily waived his right to counsel pursuant to Crim.R. 44.

**{¶34}** It is clear from these conversations with the trial court that Colquitt unequivocally and explicitly asserted his right to self-representation, not only at the arraignment, but at the pretrial hearing. However, the trial court failed to ensure in both instances that Colquitt had a sufficient understanding of the danger and perils of self-representation. While there is not a "prescribed formula or script" to be read to a defendant who states that he wishes to proceed without counsel, the totality of the circumstances must demonstrate that a defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *State v. Carney*, 12th Dist. Warren No. CA2018-08-102, 2019-Ohio-1934, ¶ 12, *quoting Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, (1974).

**{¶35}** The Sixth Amendment does not require extensive warnings in every case, but still, the trial court must provide warning to the defendant about the dangers of rejecting counsel, as well as the difficulties of attempting to follow and understand procedural and evidentiary rules without the assistance of counsel. *See State v. Johnson*, 112 Ohio St. 3d 210, 225 (2006). The Ohio Supreme Court has specified the necessity of meaningful dialogue, emphasizing the need to tailor that dialogue to the specific individual based on case specific circumstances. *See State v. Gibson*, 45 Ohio St. 2d 366, 371–378, (1976).

**{¶36}** In this instance, there is no indication that the trial court discussed the dangers and difficulties of self-representation with Colquitt at any time. A valid waiver "cannot be inferred" when the court "has not engaged in any meaningful dialogue as to the inherent risks of proceeding pro se." *State v. Studer*, 11th Dist. Portage No. 2020-P-0076, 2021-Ohio-3177, ¶ 24. Further, the failure to fully advise or otherwise have a specific exchange

regarding the pitfalls of self-representation is not remedied by the appointment of standby counsel. *State v. Johnson,* 12th Dist. Warren No. CA2015-09-086, 2016-Ohio-7266, ¶ 148 (Piper, J., concurring in judgment only), citing *State v. Bizzell*, 12th Dist. Clinton No. CA2006-04-015, 2007-Ohio-2160, ¶ 20.

{¶37} The trial court failed to make certain that Colquitt knowingly, intelligently, and voluntarily waived his right to counsel, and thus the court did not substantially comply with Crim.R 44(A). Additionally, the record does not show that Colquitt signed a waiver at his arraignment, at his pretrial hearing, or at any other point in time. Prior to trial commencing, Colquitt informed the court that he still had "the paperwork that I got from the court that I never filled out to even make [attorney Auciello] officially my standby attorney." The court did not address this and did not have Colquitt execute a waiver prior to proceeding with the trial. When substantial compliance is not demonstrated, then the failure to file a written waiver becomes reversible error. *State v. Schleiger*, 141 Ohio St. 3d 67, 71 (2014) ("If substantial compliance is demonstrated, then the failure to file a written waiver is harmless error."). Thus, in representing himself, Colquitt did so without being properly advised and without executing a proper waiver of the right to counsel.

## WAIVER OF RIGHT TO SELF-REPRESENTATION

{¶38} This is not the end of our analysis, however. At the October pretrial hearing, Colquitt stated, "I want to make sure that it's on the record that I am representing myself and [attorney Auciello] is standby counsel. And as long as he's doing what I ask him to do, I'm going to be letting him address the court." At a later point during the hearing, the court asked Colquitt who he wanted to conduct the jury selection, and Colquitt responded, "[l]ike I said, I will allow Mr. Auciello to conduct everything as long as it's in accordance with what me and him discussed," and that "[attorney Auciello] is going to be taking care of everything and I'm going to sit here nice and quietly as long as he's presenting the case in the manner

that I feel fit to – you know – my defense." Colquitt continued by stating that he was "going to let [attorney] Auciello do his thing as far as what he does because he's professional and he knows how things is supposed to be going. And if I am found guilty, I will be able to have ineffective assistance of counsel if he did some things that was not done accordingly."

{¶39} The state argues that through these statements, Colquitt waived his previously asserted right to self-representation. A defendant can waive their right to self-representation by "accepting defense counsel's assistance and allowing [counsel] to participate at trial." *State v. Beamon*, 12th Dist. Butler No. CA2018-04-065, 2019-Ohio-443, ¶ 17 (finding that the appellant "abandoned any intention to represent himself when he did not pursue the issue of self-representation" after the trial court denied his request). Even if the right to self-representation is unequivocally asserted, the defendant can waive that right through "subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *State v. Patterson*, 3rd Dist. Hancock No. 5-19-34, 2020-Ohio-1437, ¶ 16.

{¶40} Colquitt's statements, standing alone, may have indicated that Colquitt was vacillating on the issue. However, Colquitt reasserted his right to self-representation at the beginning of the pretrial hearing and then several more times in later proceedings. At the bench trial, he stated that attorney Auciello "was always appointed as standby" and that attorney Auciello "just found out today that he thought he was first chair."

{¶41} A waiver of the right to self-representation may be found "if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982). Colquitt repeatedly referenced self-representation at every stage of the proceedings, and he continued to actively participate in his defense. *See United States v. Balogun*, 5th Cir. No. 98-20855, 2000 U.S. App. LEXIS 39934, *3–4 (July 18, 2000) (finding that because Balogun never stopped

representing himself at trial, he did not waive his right to self-representation by permitting standby counsel to participate at trial). Colquitt made sure to put it on the record at the pretrial hearing that he was "representing himself" and informed the court that while representing himself, he would allow attorney Auciello to represent him *in certain matters* as long as Colquitt approved of his course of action. Thus, it does not "reasonably appear" that Colquitt abandoned his request to represent himself. It is clear, however, that Colquitt was never made aware of the limited role of standby counsel if Colquitt was representing himself.

## HYBRID REPRESENTATION

**{¶42}** The Ohio Supreme Court has held that the court is permitted to appoint standby counsel to aid the accused if and when the accused requests help, but "there are limits on how actively standby counsel can be involved." *State v. Hackett*, 164 Ohio St. 3d 74, 77 (2020). A criminal defendant "has the right to representation by counsel o*r* to proceed pro se with the assistance of standby counsel," but these two rights are "independent of each other and may not be asserted simultaneously."[2] (Emphasis added.) *State v. Martin*, 103 Ohio St. 3d 385, 391 (2004). The circumstances and analysis presented herein are similar to those in *Martin*, where the Ohio Supreme Court affirmed the Eighth District's reversal of the defendant's convictions because the trial court allowed both the defendant and counsel to play active roles in Martin's representation.

---

2. The Ohio Supreme Court has noted the importance for trial courts to explicitly define the role standby counsel will play in the proceedings and to ensure that the defendant understands the role of standby counsel. *Hackett* at 80. Allowing standby counsel to be overly involved and function as co-counsel with the defendant can (1) create "confusion as to who is the ultimate decision maker," which can lead to ethical concerns for counsel and courtroom-management challenges for the judge, (2) blur the boundaries between self-representation and hybrid representation, which "complicates the question of whether the defendant has waived the right to representation," and (3) "if standby counsel is too actively involved, a defendant's right to self-representation may be violated." *Id.* at 77.

{¶43} Because the right to proceed pro se with standby counsel and the right to be represented by counsel are two independent rights, an accused has no right to act as co-counsel with the attorney representing him. *Id.* at 390–391. While the role that standby counsel can play in a proceeding is left to the discretion of the trial court, the Ohio Supreme Court has noted the importance for trial courts to explicitly define the role standby counsel will play in the proceedings and to ensure that the defendant understands the role of standby counsel. *Hackett* at 80.

{¶44} Throughout these proceedings, Colquitt and attorney Auciello took on various aspects of Colquitt's defense. Colquitt advocated for a bond modification, a separate hearing to review the police dashcam footage, a second motion to dismiss, a continuance of the sentencing date, and a motion for reconsideration. Attorney Auciello argued a motion for a speedy trial violation, argued against the issuance of a warrant, made a motion for dismissal, objected to testimony during trial, and performed the direct and cross-examination of witnesses. While it is true that attorney Auciello conducted most of the trial proceedings, Colquitt appeared to remain in control and at times actively participated pro se. Conversations between the court, Colquitt, and attorney Auciello reveal that Colquitt and attorney Auciello both advocated on Colquitt's behalf. These conversations, however, do not clarify attorney Auciello's role. Throughout the proceedings, Colquitt, attorney Auciello, and the court referred to attorney Auciello as "his attorney" and "defense counsel" multiple times, but also referred to attorney Auciello as "standby counsel" numerous times.

{¶45} At trial, after Colquitt made a lengthy address to the court, the court asked Colquitt, "do you want standby counsel to make an opening statement for you?" After the state rested, Colquitt addressed the court, and the court asked Colquitt if he was "testifying" or "making a legal argument on [his] own behalf." The court instructed Colquitt to "concur with your standby counsel if you'd like" in deciding whether or not to testify. The court then

explained to Colquitt how a legal argument would not be considered as evidence but would be considered in applying the law to the case.

{¶46} The court also described to Colquitt the purpose of closing arguments, informing Colquitt that it would "give Mr. Auciello or [Colquitt] an opportunity to make a closing as well," later suggesting to Colquitt that "if you let [attorney Auciello] make the closing, he can do it from an attorney's perspective and then you can supplement it." At the end of the trial, in a discussion of Colquitt's jail time credit, the court allowed Colquitt to dispute the state's calculated time and then stated, "I'm going to go with 23 days. Do you have any comment on that, Mr. Auciello? I've already heard Mr. Colquitt's."

{¶47} We are not convinced by the state's argument that the trial court only "accommodated Colquitt in making a thorough record of his complaints." The court allowed both Colquitt and attorney Auciello to substantially participate in Colquitt's defense, and thus it is unclear whether the court viewed Colquitt as a pro se defendant with standby counsel or a defendant who was represented by counsel.

{¶48} At some point early on in this case, the trial court should have clarified with both Colquitt and attorney Auciello what their respective roles would be. Colquitt repeatedly and continuously expressed his desire to represent himself, and the trial court should have "explicitly define[d] the role standby counsel [would] be playing in the proceedings and ensure[d] that the defendant underst[ood] this role." *Hackett* at 80. This is the precise purpose of the waiver requirement—to "ensure knowing and intelligent waiver of counsel" and to "decrease the uncertainty created by [a] court's lack of guidance." *Id.* at 88 (Stewart, J., concurring) (agreeing with the majority but writing separately to address the role standby counsel should play).

{¶49} A trial court, in evaluating a defendant's request to represent himself "must 'traverse . . . a thin line' between improperly allowing the defendant to proceed *pro se*,

thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995). Here, the trial court permitted hybrid representation which was neither a clear pro se representation with standby counsel nor a representation directed by counsel. If Colquitt was representing himself, the court improperly allowed him to do so by failing to substantially comply with Crim.R. 44(A). If Colquitt was represented by counsel, the representation was of the hybrid variety, which does not fulfill the requirements of the Sixth Amendment. *Martin* at 391. Accordingly, Colquitt's first and second assignments of error are well-taken and are therefore sustained.

## CONCLUSION

{¶50} We find Colquitt was not prejudiced by the failure to provide a copy of the indictment prior to arraignment and that there was sufficient evidence for the court to find him guilty of felonious failure to comply. However, Colquitt's right to self-representation was compromised by the court's failure to substantially comply with Crim.R. 44(A) and by allowing hybrid representation. Accordingly, we reverse Colquitt's conviction and remand the case for further proceedings. If the matter proceeds to trial, and the defendant requests to represent himself, the court must ensure that he has validly waived his right to counsel. Further, if the trial court decides to appoint standby counsel, the court must clearly define the roles of both the defendant and standby counsel and conduct the trial according to those roles.

{¶51} Judgment affirmed in part and reversed in part. We vacate Colquitt's conviction and sentence and remand for a new trial.

M. POWELL, P.J., and HENDRICKSON, J., concur.