[Cite as *State v. Johnson*, 2023-Ohio-808.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                  Nos. 111606 and 111612

    v.                                   :

ANTHONY JOHNSON,                        :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-00-397780-ZA and CR-00-400550-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Gregory J. Ochocki, Assistant Prosecuting
Attorney, *for appellee.*

Ohio Innocence Project, University of Cincinnati College
of Law, Jennifer Paschen Bergeron and Mark Godsey, *for
appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Anthony Johnson appeals the trial court's denial of his motion for a new trial. After a thorough review of the law and the facts, we affirm.

**Procedural History and Facts**

{¶ 2} In 2001, Johnson was convicted in a bench trial of multiple offenses involving four separate cases consolidated for trial. For purposes of this appeal, we are concerned with two cases, Cuyahoga C.P. No. CR-00-397780-ZA ("court reporting school robbery") and Cuyahoga C.P. No. CR-00-400550-ZA ("parking garage robbery"). In the court reporting school robbery, Johnson was convicted of two counts of kidnapping and three counts of aggravated robbery. In the parking garage robbery, he was convicted of one count of aggravated robbery and one count of kidnapping; both counts had notice of prior conviction and repeat violent offender specifications. The trial court sentenced Johnson to a total of 27 years in prison, 18 years of which were for the two cases at issue in this appeal. [1]

{¶ 3} The following facts were adduced at Johnson's bench trial; many are summarized from Johnson's direct appeal, *State v. Johnson*, 8th Dist. Cuyahoga No. 79831, 2002 Ohio App. LEXIS 1616 (Apr. 11, 2002) ("*Johnson I*").

{¶ 4} In the fall of 2000, Cleveland police were investigating a string of robberies in downtown Cleveland. Two of the suspects developed by police were Johnson and Frederick Norman ("Norman"). Norman was subsequently arrested and convicted of several robberies. At trial, Johnson claimed that Norman committed the crimes for which he was on trial. In the years after his conviction,

---

[1] Johnson was also convicted of one count of possession of drugs (Cuyahoga C.P. No. CR-00-398577-A); one count each of robbery, kidnapping, gross sexual imposition, and receiving stolen property (Cuyahoga C.P. No. CR-00-399616-ZA). In a fifth case, Johnson pleaded guilty to escape (Cuyahoga C.P. No. CR-01-401332-ZA).

Norman submitted eight affidavits and other letters stating that it was him, not Johnson, who committed the parking garage and court reporting school robberies.[2]

**Parking Garage Robbery**

{¶ 5} In the early evening hours of September 15, 2000, friends R.S. and B.B. were at B.B.'s car after a birthday celebration. B.B. was bent over putting balloons in the car and stood up to see a man wearing a green windbreaker-type jacket holding a knife to R.S.'s throat. B.B. saw a second man approach, screamed, and ran; the second man chased her. Near the entrance to the parking garage, B.B. tripped and fell, but the men fled after the knife-wielding man yelled, "We got the money. Let's go, man."

{¶ 6} B.B. and R.S. reported the incident to police. Approximately ten days later, B.B. viewed a photo array and identified Johnson as the man who attacked R.S. B.B. also positively identified Johnson in court. According to R.S., the knife-wielding man demanded her purse. She did not get a good look at him but reported he was an African-American male wearing a green windbreaker. R.S. said the second man was wearing a yellow polo shirt. R.S.'s purse, minus her money, was

---

[2] In March 2003, Cleveland police were contacted by the Cuyahoga County Prosecutor's Office, who had secured an affidavit from Norman confessing to the parking garage robbery. Norman was subsequently charged with two counts of aggravated robbery and kidnapping with specifications. In 2015, Norman pleaded guilty to one amended count of aggravated theft and was sentenced to six months in prison to run concurrent with his other cases. *See State v. Norman*, Cuyahoga C.P. No. CR-03-436751-ZA.

recovered in a nearby alley later that evening. R.S. was unable to identify her attacker but did identify the green windbreaker he was wearing.

**Court Reporting School Robbery**

{¶ 7} In the afternoon hours of October 9, 2000, three friends, S.B., H.P., and B.C., were looking for something in H.P.'s car, which was parked in an alley, after finishing class at the Academy of Court Reporting in downtown Cleveland. A man wearing a green windbreaker came up behind S.B. and told her to get into the car. S.B. initially refused but then saw the man had a knife, so she complied. He forced the three women in the car.

{¶ 8} The assailant instructed H.P. to drive to the vicinity of Cedar Avenue and East 30th Street. He told B.C. to hand over her purse, which she did. The man also took S.B.'s purse, which contained $200, before getting out of the car.

{¶ 9} The women returned to the school and called police. S.B. viewed a photographic array but was unable to identify a suspect. The day after the robbery, S.B. viewed an in-person lineup, at which time she identified Johnson as the man who kidnapped and robbed them. S.B. also identified Johnson in court.

{¶ 10} B.C. testified that the man who attacked them was very dark-skinned, and that she looked at his face when he first approached the car, while they were driving, and as he got out of the car. H.P. testified she looked at the man in the rear view mirror several times while she was driving. At trial, the victims identified a hat and a windbreaker as belonging to the man that robbed them.

{¶ 11} B.C. and H.P. separately viewed photo arrays at the police station the same day as the robbery and both chose Johnson as the man who had robbed them. B.C. and H.P. also separately viewed Johnson in an in-person lineup and identified him. Both women identified Johnson in court.

**Direct Appeal – *Johnson I***

{¶ 12} Johnson filed a direct appeal, challenging police identification procedures, the sufficiency and manifest weight of the evidence, and the consecutive nature of his sentence. This court affirmed his convictions but reversed in part and remanded the case for resentencing. *Johnson I.*

{¶ 13} On March 6, 2002, Johnson filed a petition for postconviction relief, which he later withdrew. On May 14, 2002, Johnson filed a motion for DNA testing along with an affidavit from Norman, dated May 10, 2002, in which Norman stated he alone committed the court reporting school robbery and that he had discarded some clothing and a hat immediately following the robbery. The trial court denied Johnson's motion without a hearing. Johnson did not appeal that order.

**Motion for a New Trial – *Johnson II***

{¶ 14} On October 1, 2002, Johnson filed a motion for new trial. In support of his motion, Johnson attached a second affidavit from Norman, this one dated August 14, 2002. In his affidavit, Norman averred he alone committed the parking garage robbery. The trial court denied Johnson's motion for new trial without a hearing and Johnson appealed. This court affirmed, holding the trial court did not abuse its discretion in denying Johnson's motion for new trial without a hearing. In

reaching this decision, this court found that Norman's affidavit did not disclose a strong probability that the result would change if a new trial was granted. *State v. Johnson*, 155 Ohio App.3d 145, 2003-Ohio-5637, 799 N.E.2d 650, ¶ 20 (8th Dist.) ("*Johnson II*").

**DNA testing and *Johnson III***

{¶ 15} On October 21, 2004, Johnson filed a pro se motion for DNA testing, attaching two more affidavits from Norman: an affidavit dated November 6, 2002, in which he stated he committed the "crimes for which Anthony Johnson was convicted" and an affidavit dated December 27, 2002, in which Norman stated that he would be willing to provide DNA samples. On October 29, 2004, the trial court denied Johnson's application for DNA testing without a hearing. Johnson did not appeal.

{¶ 16} On February 8, 2013, after securing representation from the Ohio Innocence Project, Johnson filed a third application for DNA testing. The state opposed Johnson's application, and the trial court denied the application without a hearing, finding that it failed to satisfy statutory requirements and testing would not be outcome determinative. On appeal, this court reversed the judgment of the trial court and remanded the case, finding that DNA testing would be outcome determinative. *State v. Johnson*, 2014-Ohio-2646, 14 N.E.3d 482 (8th Dist.) ("*Johnson III*"). A panel of this court reasoned:

> The case for which Johnson is requesting the DNA testing only concerned the robbery on October 9, 2000 [court reporting school robbery]. In that case, the victims testified that there was only one

perpetrator and described the clothing he wore, which was later recovered. We understand that the victims picked Johnson out of a live line up and photo array, however, if his DNA is not on the clothing but Norman's is, this would make the victims' identification suspect, especially because Norman has confessed to committing this robbery.[3]

Thus, we conclude that the DNA testing would be outcome determinative. If Norman's DNA is located on the hat and jacket but Johnson's DNA is not found on the hat and jacket, the DNA evidence along with Norman's confession, would point to Norman as the perpetrator of the crime.

*Id.* at ¶ 25-26.

{¶ 17} The case was remanded, but the evidence that was to be sent for DNA testing could not be located after a thorough investigation and evidentiary hearing involving the Cuyahoga County's Prosecutor's Office, Clerk of Courts, Court Reporter's Office, Cleveland Police, and defense counsel.

**Motion for Leave to File a Motion for New Trial – *Johnson IV***

{¶ 18} In July 2020, Johnson filed a motion for leave to file a motion for new trial based on newly discovered evidence. Johnson claimed that Norman's affidavits, an affidavit from Charles Goodsell, Ph.D. (Johnson's proposed expert in eyewitness testimony), and documentary materials concerning the lack of biological evidence for DNA testing, constituted newly discovered evidence. The state opposed the motion. The trial court denied Johnson's motion for leave without a hearing, and he appealed the decision.

---

3 Each of the three victims also identified Johnson in court, "unequivocally and without hesitation, as the person who had committed the crimes." *Johnson I* at 19.

{¶ 19} This court reversed the trial court's decision, finding that Johnson should have been granted leave to file a motion for new trial. *State v. Johnson*, 8th Dist. Cuyahoga Nos. 110163 and 110228, 2022-Ohio-523 ("*Johnson IV*"). In deciding that the trial court erred in denying Johnson's motion for leave, this court focused on the unique circumstances of this case. *Id.* at ¶ 35. This court determined that res judicata did not bar a successive motion for a new trial because, although Johnson's theory of the case was not new, he had not been afforded the opportunity to present testimony from Norman or Goodsell to determine whether a new trial was warranted:

> While the whereabouts of the missing evidence was thoroughly litigated — to no avail — at the trial court, the substance of Johnson's argument that he is entitled to a new trial based on Norman's confession as the perpetrator of his crimes has not been litigated. Therefore, Johnson's motion for leave is not barred by res judicata.

*Id.* at ¶ 39.

{¶ 20} This court clarified that its decision was limited to the narrow issue of whether Johnson should have been granted leave to file a motion for a new trial. *Id.*

{¶ 21} On February 8, 2022, the trial court granted Johnson's motion for leave to file a motion for new trial. On March 7, 2022, Johnson filed his motion for new trial based on newly discovered evidence, attaching the same evidence he had submitted in his motion for leave to file a motion for new trial. The state opposed his motion.

{¶ 22} The trial court denied Johnson's motion for a new trial without a hearing. This timely appeal followed.

## Assignments of Error

I. The trial court abused its discretion by denying appellant's motion for new trial.

II. The trial court abused its discretion by denying a new trial without an evidentiary hearing where the paper filings are credible and exonerate appellant.

{¶ 23} We combine the assignments of error for review and disposition.

## Law and Analysis

## Motion for New Trial

{¶ 24} This court reviews the denial of a motion for new trial for an abuse of discretion. *State v. McFarland*, 8th Dist. Cuyahoga No. 111390, 2022-Ohio-4638, ¶ 20, citing *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 25} Recently, this court reiterated that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *McFarland* at *id.*, citing *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d

454, ¶ 15 (8th Dist.). Importantly, when applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *McFarland* at ¶ 21, citing *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist).

{¶ 26} Crim.R. 33(B) provides that when a defendant wishes to file motion for new trial based on newly discovered evidence more than 120 days after a verdict is rendered, they must seek leave from the trial court to file a delayed motion. *State v. Hale*, 8th Dist. Cuyahoga No. 107782, 2019-Ohio-1890, ¶ 9. To obtain leave, the defendant must show clear and convincing proof that they were unavoidably prevented from filing their motion for a new trial. Crim.R. 33(B). A person is unavoidably prevented from filing a motion for a new trial if the person "had no knowledge of the existence of the ground supporting the motion * * * and could not have learned of the existence of that ground within the time prescribed for filing the motion * * * in the exercise of reasonable diligence." *Hale* at *id.*, citing *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 27} In *Johnson IV*, a divided panel of this court found the state's argument that Johnson failed to show he was unavoidably prevented from timely filing his motion for a new trial "unpersuasive" because it "ignore[d] the tortured procedural and factual history that has brought us to this point." *Id.* at ¶ 37. We are bound by *Johnson IV*; therefore, Johnson has shown that he was unavoidably delayed in filing his motion for a new trial.

**{¶ 28}** In addition to finding that Johnson was unavoidably prevented from timely filing his motion, Johnson must also show that he is entitled to the new trial. Johnson claims that he is entitled to a new trial based on newly discovered evidence as set forth in Crim.R. 33(A)(6), which provides that a new trial may be granted

> [w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the grounds of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

**{¶ 29}** To grant a motion for a new trial based on newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

**Res Judicata does not Apply; no Hearing on Motion is Mandated**

**{¶ 30}** As an initial matter, we dispense with the state's argument that res judicata bars Johnson's arguments.[4]  In *Johnson IV*, this court held that res judicata

---

[4] The doctrine of res judicata provides that a final judgment of conviction bars a convicted defendant who was represented by counsel from "raising and litigating in any

does not bar Johnson's motion for leave to file a motion for new trial. Following the same reasoning, res judicata also does not bar Johnson's motion for a new trial. Although his motion for a new trial is not barred by res judicata, Johnson is not automatically entitled to a hearing on his motion. A hearing on a motion for a new trial is discretionary, not mandatory. *Johnson II* at ¶ 19. The standard of review is the same as that for the denial of a motion for a new trial — the trial court's decision on whether the motion for a new trial warrants a hearing is reviewed for an abuse of discretion. *Id.* at ¶ 15, citing *Toledo v. Stuart*, 11 Ohio App.3d 292, 293, 465 N.E.2d 474 (6th Dist.1983).

**Exhibits in Support of Motion for New Trial**

{¶ 31} As is germane to this appeal, Johnson submitted the following in support of his motion for a new trial: (1) argument about missing evidence that could have been tested for Norman's DNA; (2) affidavit of Charles Goodsell, Ph.D.; and (3) affidavits and letters from Norman.

**DNA Evidence**

{¶ 32} As mentioned in *Johnson IV*, the issue of the missing evidence was already fully litigated; after a thorough search, the evidence Johnson wanted further testing on (the hair, windbreaker, and hat) could not be located. *Id.* at ¶ 39.

---

proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant" at trial or on direct appeal. *Johnson IV* at ¶ 38, citing *State v. Johnson,* 8th Dist. Cuyahoga No. 108311, 2020-Ohio-568, ¶ 15*,* citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

Granting a hearing on Johnson's motion for a new trial to further discuss the missing evidence would serve no purpose other than to relitigate the issue.

**Goodsell's Affidavit**

{¶ 33} Goodsell was Johnson's proposed expert witness in eyewitness identification. In a 22-page affidavit dated February 7, 2019, Goodsell set forth his concerns with eyewitness identification that "could indicate" the victims mistakenly identified Johnson as the perpetrator.

{¶ 34} Goodsell's proposed testimony does not meet the *Petro* factors. First, Johnson has not shown that an expert in eyewitness testimony was not available to him before trial; we note that many of the publications Goodsell relies on in his affidavit were published prior to Johnson's trial. Additionally, there is not a strong probability that the results of the trial would have been different had Goodsell, or another expert in eyewitness identification, testified at trial. Johnson himself concedes that Goodsell's affidavit is not in and of itself conclusive.

{¶ 35} In *Johnson I*, Johnson argued that he was denied due process because the police employed suggestive identification procedures. This court overruled his assigned error, finding, as to both robberies:

> The victims had ample opportunity to view the appellant's face during the robberies. The victims' prior description of the appellant to the police was relatively similar. The victims' level of certainty about picking the appellant as their attacker was uniformly high. The length of time between the crimes and the identification procedures was short, from as little as a few hours, to a day or two, to at most a few weeks depending on the victim. Finally, each victim who testified at trial identified the appellant, unequivocally and without hesitation, as the person who had committed the crimes herein.

*Id.* at 19.

{¶ 36} Four victims separately identified Johnson as their assailant. Approximately ten days after the parking garage robbery, victim B.B. viewed a photo array and identified Johnson as the man who was holding a knife to R.S.'s throat. B.B. also positively identified Johnson in court as the knife-wielding assailant. The three victims of the court reporting school robbery each identified Johnson from an in-person lineup and in court. Two of the victims, B.C. and H.P., viewed photo arrays on the same day as the robbery and identified Johnson.

**Norman's Affidavits**

{¶ 37} Norman filed eight affidavits dating from 2002 to 2018 claiming he, not Johnson, committed the two robberies. Although each affidavit in and of itself may be "new" because it was executed after Johnson's trial, Norman's affidavits do not constitute newly discovered evidence under *Petro*.

{¶ 38} The affidavits are summarized as follows: (1) May 10, 2002: Norman states he was the sole assailant in the court reporting school robbery and the police never questioned him regarding the robbery; (2) August 14, 2002: Norman states he was the sole assailant in the parking garage robbery and Johnson did not commit the robbery; (3) November 6, 2002: Norman claims he committed both robberies; (4) December 27, 2002: Norman offers to give samples of his DNA; (5) January 15, 2003: Norman states he met Johnson in prison and was surprised that Johnson was convicted of the robberies when he (Norman) thought he had pled guilty to

those crimes; (6) April 2, 2003: Norman claims he committed the court reporting school robbery but the police never questioned him; clarifies that he committed the parking garage robbery alone but another man, not Johnson, accompanied him; he was questioned by a police detective in November 2000 regarding the parking garage robbery; he wore and discarded clothing similar to that described by the victims; and (8) July 27, 2009 and May 10, 2018: Norman reiterates claims he committed both robberies.

{¶ 39} In *Johnson II*, this court affirmed the trial court's decision to deny Johnson's first motion for new trial regarding the parking garage robbery, finding that Norman's affidavit did not disclose a strong probability that Johnson would be found not guilty if a new trial was granted. *Johnson II* at ¶ 20. This court noted the evidence presented at trial was that two men were involved in the robbery and Johnson was identified as one of the involved men. *Id.*

{¶ 40} Johnson relies on *State v. Gray*, 8th Dist. Cuyahoga No. 94282, 2010-Ohio-5842, wherein this court reversed the decision of the trial court to deny a motion for new trial without a hearing on an aggravated murder conviction after a witness recanted her testimony. *Gray* is distinguishable. In *Gray*, the defendant was convicted "essentially" on the testimony of two witnesses who identified him as the shooter. *Id.* at ¶ 25. One witness, who was also charged with the victim's murder, accepted a plea deal "to a significantly lesser crime" in exchange for testifying against the defendant. *Id.* The other witness later recanted her testimony and submitted an affidavit asserting the defendant's innocence.

{¶ 41} This court found that the trial court should have held a hearing on the motion for new trial because the trial court could not properly discredit the recanting witness's affidavit on its face "at least in the absence of internal inconsistencies in the affidavit sufficient to destroy its credibility on its face." *Id.* at ¶ 27. This court further noted that the only objective eyewitness testimony contradicted the testimony of the two witnesses who identified the defendant as the shooter. *Id.*

{¶ 42} This case is different. There is no recanting witness, nor is there a witness who testified against Johnson in exchange for a reduced charge. Here, there are five victims, three of which identified him in a photo array, three who identified him in an in-person lineup, and four that identified Johnson at trial "unequivocally and without hesitation, as the person who had committed the crimes herein." *Johnson I* at 19.

{¶ 43} There are also several inconsistencies in Norman's affidavits, both internal and inconsistent with testimony of other witnesses. The investigating detective, Detective Michael Alexander, testified that when he interviewed Norman, Norman denied involvement in either robbery, stating that he had never robbed "any Black females."[5] In his May 10, 2002 affidavit, Norman stated that he committed the "muggings in downtown Cleveland between September 27, 2000 through October 9, 2000" with "the crime I committed on October 9" (the court reporting school robbery) being the last one. However, Norman also pleaded guilty

---

[5] The record reflects that the four victims who positively identified Johnson are Black. R.S., who could not identify her attacker, is white.

in an unrelated case to committing an aggravated robbery that occurred on October 14, 2000. *See State v. Norman*, Cuyahoga C.P. No. CR-01-402532-ZA. And in later affidavits, he purports to admit to committing the parking garage robbery on September 15, 2000.

{¶ 44} In his August 14, 2002 affidavit, Norman stated that he committed the parking garage robbery alone. In his January 15, 2003 affidavit, Norman stated that there was another man with him when he committed the robbery. In his April 2, 2003 affidavit, Norman identifies the other man but claims that the man was not involved in the robbery. B.B. testified, however, that the second man pursued her during the robbery and only stopped when the knife-wielding attacker yelled to him that they should leave.

{¶ 45} Of more importance to this court, Norman's alleged involvement in the parking garage and court reporting school robberies was known to Johnson before trial. Johnson contends that he did not know Norman until they met in prison in late 2002 or early 2003. But defense counsel's trial strategy relied on the theory that Norman was the actual perpetrator of the robberies and Johnson had been misidentified by the victims.

{¶ 46} Beginning with opening statement, defense counsel explained:

Judge, it is our contention — and we're not disputing these crimes occurred, but it is our contention that if anyone committed these crimes it would have been Fred Norman not Anthony Johnson, and we believe once these witnesses come into the court and they are able to see Mr. Johnson in person and in a better position than he was in at the time of the photo array and live lineup, they will indicate that Mr. Johnson is not the individual that robbed them on that day, that Mr. Johnson had

nothing to do with it, and that Fred Norman was basically the person or other people that was involved in these robberies, and not our client. And we believe once all the evidence is heard and analyzed and evaluated by the Court, the Court will not find a sufficient basis to state that the State has proven these charges against my client beyond a reasonable doubt.

{¶ 47} During direct examination, the prosecutor asked Detective Alexander if he interviewed Norman:

Q. Did you have an opportunity to investigate an individual in some other robberies that occurred downtown by the name of Frederick Norman?

A. Yes, I did.

Q. Okay. Through your investigation, did you learn whether Fred Norman was involved in any of the robberies that this defendant is charged with here in this case?

A. No, he was not. As a matter of fact, when I spoke with him, he stated that he never robbed any Black females. * * * I showed Anthony Johnson's photo array to several other victims that [were] related to Frederick Norman's case, and they did not pick [Johnson] either.

{¶ 48} During cross-examination, defense counsel asked Detective Alexander:

Q. The robbery of October 4 of 2000, that was not a robbery in which you charged Mr. Johnson with, is that correct?

A. That's correct.

Q. In fact, you charge this Fred Norman with it?

A. That's correct. * * *

Q. When you showed that victim photos or live lineup * * * with Anthony Johnson in it? * * * She failed to identify him?

A. That's correct.

Q. But later on she did identify Fred Norman?

A. That's correct.

{¶ 49} Defense counsel also tried to establish that Norman lived near where the robberies took place:

Q. It was Fred Norman who lived in a homeless shelter in downtown Cleveland; isn't that a fact?

A. Yes, on Lakeside.

{¶ 50} Finally, during closing arguments, defense counsel reiterated the theory that Norman committed both robberies. Counsel noted that there had been a number of robberies committed in downtown Cleveland from September to November 2000, argued that Johnson did not commit the robberies, and pointed out that Norman had been "charged with a number of these crimes that were committed during this period of time."

{¶ 51} In light of the above, the evidence Johnson submitted in support of his motion for a new trial does not meet the criteria of newly discovered evidence under *Petro*. We recognize the "tortured procedural and factual history" of this case but note that much of the history revolves around the DNA testing, which has already been litigated. We are reminded that we may not substitute our judgment for that of the trial court on the issues of this case — whether to grant the motion for a new trial or whether hearing on the motion for a new trial is warranted; that discretion lies with the trial court. Absent the trial court applying the wrong legal standard or misapplying the correct legal standard, which it did not, or relying on clearly

erroneous findings of fact, which it also did not, we cannot say that the trial court abused its discretion.

{¶ 52} The assignments of error are overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

FRANK DANIEL CELEBREZZE III, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR